WILLIAM A. BOOTH, APPELLANT, v. FERDINAND CLARK.

There was a judgment recovered in the supreme court of New York, upon which a *fieri facias* was issued, the return to which was, "no goods, chattels, or real estate of the defendant to be levied upon."

The creditor then filed a creditor's bill before the chancellor of the first circuit in the State of New York, to subject the equitable assets and *choses in action* of the debtor to his judgment. The bill was taken *pro confesso*, and, in 1842, a receiver was appointed. The debtor was also enjoined from making any disposition of his estate, legal or equitable; but the court had not been applied to, either by the creditor or the receiver, for any order upon the debtor, *in personam*, to coerce his compliance with the injunction or decree.

In 1843, the debtor went into another State and took the benefit of the bankrupt law of the United States. An assignee was appointed, and, after his death, another person to succeed him.

In 1851, a sum of money was awarded to the debtor for a claim accruing anterior to the judgment, by the commissioners under the Mexican treaty, which was claimed by the receiver and also by the assignee in bankruptcy, both prosecuting their claims in the circuit court of the United States for the District of Columbia.

The assignee in bankruptcy has the best right to the fund.

A receiver is an officer of the court which appoints him, but cannot sue, in a foreign jurisdiction, for the property of the debtor.

The proper course would be to compel obedience to the injunction, by a coercion of the person of the debtor, obliging him either to bring the property in dispute within the jurisdiction of the court, or to execute such a conveyance or transfer thereof, as will be sufficient to vest the legal title as well as the possession of the property, according to the *lex loci rei sitæ*.

The New York and English cases upon this subject examined.

The distinction between a receiver in chancery under a creditor's bill and an assignee in bankruptcy explained.

In England, an assignee in bankruptcy is held to be vested with the personal property of the bankrupt which is in foreign countries; and her courts acknowledge the validity of the title of a foreign assignee to property in England, when such title emanates from a country which has a bankrupt law similar to her own.

But this rule does not prevail in the United States, either as regards a foreign assignee or an assignee under the laws of another State in the Union. The reason is

Booth *v.* Clark.

stronger for declining to give such efficacy to a receiver under a creditor's bill. And, moreover, there was in this case a want of vigilance in the creditor and receiver, by their omitting to proceed in the regular chancery practice against the person of the debtor, as above stated.

THIS was an appeal from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

The dispute was about the same sum of money which was in controversy in the preceding case of Clark *v.* Hackett.

Booth filed his bill in the circuit court, claiming the money in virtue of his character of receiver, appointed by the chancellor of the first circuit in the State of New York. All the circumstances of the case are recited in the opinion of the court.

On the 29th of March, 1853, the circuit court dismissed the bill, and Booth appealed to this court.

The case was argued by *Mr. Bradley,* for the appellant, and by *Mr. Lawrence* and *Mr. May,* for the appellee.

The counsel for the appellant contended:—

1. That by the proceedings in the court of chancery of New York the property of Clark was vested in the receiver, Booth, before Clark petitioned for the benefit of the bankrupt act, and the right of Booth was not affected by the voluntary bankruptcy and discharge of the defendant. 2 Rev. Stat. 173, §§ 38, 39, in margin; Storm *v.* Waddell, 2 Sandf. ch. 494, 510, 512, and cases cited.

The order of the court works the transfer of the title. Mann *v.* Pentz, 2 Sandf. ch. 257, 271, 272.

The subsequent discharge did not devest the title thus created. Marcy *v.* Jordan, 2 Denio, 570.

It is like an execution in the hands of the sheriff, not levied, which, by the "settled law of the State," binds the property. Savage's Assignees *v.* Best, 3 How. 111.

Or the attachment in a New Hampshire suit. Peck et al. *v.* Jenness et al. 7 How. 612, 619, 622.

It is the settled law of the State of New York, 2 Sandf. ch. 519.

II. The receiver could maintain any action in relation to the property, and rights of property, which the debtor himself could have had. 6 Barb. Sup. Ct. R. 542, 544; 3 Sandf. 311, 316, 317.

III. The matter in controversy was a *chose in action* at the time of the appointment of the receiver, was personal property, followed the person of the owner, and passed to the receiver.

The term *chose in action* is broad enough to pass the claim in question, whether the evidence of the debt was in his possession or not, at the time of the appointment of the receiver. Na-

than v. Whitelock, 9 Paige, 159 ; North v. Turner, 9 Ser. and
Raw. 244 ; and the authorities there cited.  19 Wend. 75 ; Gil-
lett v. Fairchild, 4 Denio, 80, 82, and cases cited.

A claim upon a foreign government would be embraced in
such an assignment.  4 Denio, *supra*, and cases cited.  Couch
v. Delaplain, 2 Coms. 397, 402, 403 ; Milner v. Metz, 16 Pet.
321 ; Comegys v. Vass, 1 Pet. 193, 2 Story's Eq. § 829, 1040.

The fund not being the subject of manual possession, an ap-
propriation of it is all that is required.  5 Binn, 392, 398.

But it was not merely a loose unsettled demand of redress
for injuries.  The treaties of 1839 and 1843, gave it a fixed
character.

Having no locality, the validity of its transfer depends on the
law of the place where the transfer was made.  2 Kent's Comm.
570, 7th ed. ; Story's Confl. § 362, 383, 399 ; Van Buskirk v.
Hartford Fire Insurance Co. 14 Conn. 583, 586, 587, 588, 590.

"According to the law of the place where made."  Black v.
Zacharie, 3 How. 483 ; Oakey v. Bennett, 11 Ib. 44.

The court of chancery in New York had jurisdiction of the
subject-matter, and of the person.  It carried with it jurisdiction
over his personal effects.  Holmes v. Renesen, 4 Johns. ch. 485 ;
S. C. 20 Ib. 262 ; Hooper v. Tuckerman, 3 Sandf. Sup. Ct. Rep.
311, 317 ; Hoyt v. Thompson, 1 Selden, 320 ; Story's Confl. 420 ;
Life and Letters of Joseph Story, vol. 1, p. 380, Letter to Chan-
cellor Kent.

The defendant resided in the city of New York.  He was
engaged in business there.  His original domicile was in Massa-
chusetts ; his next, a domicile for commercial purposes, in Ha-
vana ; next, from 1841 to 1844, his residence and domicile for
business was in New York.

And while so residing and doing business in New York, he
appeared in the chancery court, in this cause.

There is no evidence to show any other residence or domicile
elsewhere, from 1841 to 1843.  In the absence of such proof,
*primâ facie* he was a domiciled citizen of New York, and his
rights over his personalty are to be governed by the laws of that
State.

We assume, upon these points, that if this cause was in a
New York court, the right of receiver would not admit of dis-
pute.

IV.  The circuit court of the District of Columbia had juris-
diction of this case ; was bound to enforce the rights of the
receiver according to the law of the State of New York, and
ought to have rendered a decree in favor of the appellant.

1. It had jurisdiction of the cause, if the right of the receiver
was complete under the laws of the State of New York.  Holmes

*v.* Renwer; Hooper *v.* Tuckerman; Hoyt *v.* Thompson; Story's Confl. 419, 420, 421, already cited; Thomas *v.* Merchant's Bank, 9 Paige, 216; McLaren *v.* Pennington, 1 Ib. 102; Bank of Augusta *v.* Earle, 13 Pet. 520, 589, 590, 591; Metz. *v.* Milner, 16 Ib. 321.

2. There were no conflicting claims on the part of any citizen of the District of Columbia, and the court was bound to give effect to the foreign assignment, not only by the comity of nations, but by the peculiar federal relations existing in this country.

3. The policy of the law of this District shows an enlarged comity. Executors and administrators, by statute act, (24th June, 1812, § 11, 2 Stats. at Large, 758,) and assignees of insolvents in the several States, have always been allowed by the courts to sue here. The receiver in this case is not a common law receiver, but a receiver by statute, as in case of insolvency.

4. The court had jurisdiction under the act of 3d March, 1849.

The title of Booth being consummate, and the fund enjoined, and locked up in the treasury, at the instance of the creditors of Clark, it was subject to the claims of other creditors giving notice and filing their bonds.

The design was to keep the money in the treasury, in order that claimants should have a reasonable time to prosecute their rights; the risk ran was that it should be paid over. As regards the claimant, it was merely directory. Time was not of the essence of the law.

" There is a known distinction between circumstances which are of the essence of a thing required to be done by an act of parliament, and clauses merely directory. The precise time, in many cases, is not of the essence." Rex *v.* Loxdale, 1 Burr, 447.

The provisions of a law which are merely directory, are not to be construed into conditions precedent. Laws are construed strictly to save a right or avoid a penalty, but liberally to give a remedy, or effect an object declared in the law. Whitney *v.* Emmett, 1 Bald. C. C. R. 316.

The intention of the legislature should be followed, whenever it can be discovered, although the construction seem contrary to the letter of the statute. Dwarris on Stat. 718; The People *v.* The Utica Insurance Co. 15 Johns. 380. See also 6 Cranch, 307; 3 How. 565.

By the court: " Courts are not to construe an act so liberally as to work injustice; but so liberally as to prevent the mischief, and advance the remedy." Jackson *v.* West, 10 Johns. 466.

Negative words will make a statute imperative; words in the affirmative are directory only. Rex *v.* Leicester, 9 Dowl. and Ry. 972; 7 Barn. and Cress. 12.

Where a statute directs a person to do a thing in a given time, without any negative words restraining him from doing it afterwards, the naming of the time will be considered as directory to him, and not as a limitation of his authority. Pond v. Negus, 3 Mass. 230; Smith's Com. § 670, et seq.; Stinson v. Huggins, 16 Barb. 61.

When an act is to be done within a given time, it may be done afterwards, if nothing have occurred to prevent it. Griffith v. Minor, 1 Louis. R. 350; Proseus v. Mason, 12 Ib. 16.

Under a directory statute, a duty not performed at the time specified, may be valid if performed afterwards. Webster v. French, 12 Illinois, 302.

Remedial statutes have been made to extend, by an equitable construction, to other persons, to other things, to other places, and to other times than those expressly mentioned in the statute. Dwarris, 721–726.

Apply these rules to this statute and the facts of this case, and the conclusion is inevitable, that so long as the fund continued in the treasury, the court had jurisdiction to entertain and adjudicate on the complainant's claim to it. It was of no importance that the proceedings should be instituted within any specific time after the award, though it was essential that they should be, while the money was in the treasury. The intent was to prescribe the length of time the money should remain without any claim. It was not a condition precedent, to give the notice within thirty days. There is nothing in the statute to restrain its being done afterwards.

Finally: The circuit court had jurisdiction by reason of the general powers conferred upon it by statute.

It has all the powers given to the circuit courts of the United States by the act of 13th February, 1801. " Cognizance of all cases in equity between parties, both or either of which shall be resident or be found within said district, (act of 27th February, 1801, § 5; 2 Stats. at Large, 106,) to proceed against non-residents in the same way as they are proceeded against in the general court, or in the supreme court of chancery in the State of Maryland. Act of 3d May, 1802, § 1; 2 Stats. at Large, 193; and see Kendall v. The United States, 12 Pet. 524.

Clark was here litigating the case of B. C. Clark, (now in this court,) and appeared and answered in this case. The fund itself had been enjoined, and was subject to the decree of the court, and was a fund in court. The court had jurisdiction.

The counsel for the defendant in error contended: —

1. That the bill was properly dismissed, because the complainant had not filed his bill of complaint, given notice to the

secretary of the treasury, or filed his bond, as required by the 8th section of the act of 3d March, 1849, (9 Stats. at Large, 394.)

No notice was given to the secretary, the bill was not sworn to or filed till the 29th of May, 1851, and the bond on the same day,—being about fifteen days after the expiration of the thirty days limited in said section.

2. The proceedings in the chancery court of New York, being proceedings *in rem*, could only affect property within the territorial jurisdiction of the State. Story's Confl. Laws, § 543.

Indeed, the authorities in New York seem to go to the extent that the decree operates only on property discovered by the proceedings, even within the jurisdiction of the court. Storm *v.* Waddel, 2 Sandf. 495; 4 Ed. Ch. R. 658; 1 Paige, 637; 2 Ib. 567; 7 Ib. 47, 513; 8 Ib. 569, 475.

It will be seen by the record that the only return made by the receiver of any property of Clark was dated June 30, 1851, which was six years after the sale and eight years after the discharge of Clark in bankruptcy.

In fact, no action was taken in this chancery proceeding, from the year 1842 until 1851.

At the time that this receiver was appointed in New York, the claim now in controversy was a claim against the Republic of Mexico.

Clark's native domicile was Massachusetts. He resided for a while in Havana, and afterwards returned to his native State, and then took up his abode in New Hampshire. See Story's Confl. Laws, §§ 591, 592.

3. The bankrupt court having taken jurisdiction of the claim in controversy, and it having been disposed of under its decree, the property has effectually passed. City Bank of New Orleans *v.* Houston, 6 How. 486.

4. There was not, by the decisions in New York, any specific lien on the property in question by virtue of the appointment of a receiver; and if there had been, it should have been presented in the district court, and would have been there recognized. *Ex. parte* Christy, 3 How. 316; Savage *v.* Best, 3 Ib. 119; Norton *v.* Boyd, 3 Ib. 436; Waller *v.* Best, 3 Ib. 111; Jenness *v.* Peck, 7 Ib. 612.

Mr. Justice WAYNE delivered the opinion of the court.

We learn from the record of this case that Juan de la Camara recovered a judgment in the supreme court of New York, against Ferdinand Clark, for $4,688 $\frac{49}{100}$, with interest at 7 per cent.; that a *fieri facias* was issued upon the judgment, and that there was a return upon it of " no goods, chattels, or real estate of the de-

fendant to be levied upon." Upon this return, Camara filed a
creditor's bill, before the chancellor of the first circuit in the
State of New York, setting out his judgment and the return
upon the *fieri facias*, in which he seeks, under the laws of that
state, to subject the equitable assets and *choses in action* of
Clark to his judgment; and he asks for a discovery of them
from Clark, for an injunction, and the appointment of a receiver.
Notice of this proceeding, and of the action upon it, were served
upon the solicitor of Clark, and the bill of complaint was taken
as confessed, upon the defendant's default in not answering.
Booth, the present complainant, was appointed receiver on the
3d August, 1842. Clark had been previously enjoined under
the proceeding from making any disposition of any part of his
estate, legal or equitable. Thus matters stood from the time of
the receiver's appointment, in 1842, until June, 1851. Then
Booth, as receiver, reports that no effects of Clark had come to
his knowledge, except a claim upon Mexico, which had been
adjudged to Clark by the United States commissioners, under
the treaty with Mexico; and that, as receiver, he was contesting
it; and he asks from the court authority to proceed for that
purpose, which was granted. Such is an outline of the case in
New York, containing every substantial part of it.

We will now state the proceedings of this suit at the instance
of the receiver, in the circuit court of the United States for the
District of Columbia, from the decision of which, dismissing the
receiver's bill, it has been brought to this court for revision.

On the 29th May, 1851, Booth, the receiver, filed his bill in
the circuit court for the District of Columbia, reciting so much
of the proceedings of the New York courts as was deemed
necessary to support his suit. He declares that Clark, when
the original suit was instituted against him by Camara, and
from that time until after he had been appointed receiver, had
resided in New York. That his effects consisted principally, if
not wholly, of the claim upon Mexico, and that he claimed that
fund as receiver for the purposes of that appointment. Clark
answered the bill. He denies that the proceedings against him
in the courts of the State of New York created any lien in be-
half of Camara, or the receiver, upon the fund in controversy.
He admits that no part of his property ever came into receiver's
hands, under those proceedings, and that he had the claim upon
Mexico whilst the suits were pending against him, and when
the receiver was appointed under Camara's creditor's bill; but
that all the evidences and papers in support of his Mexican
claim were then in the public archives at Washington. He also
states, that the board of commissioners under the act of congress
of March 3, 1849, entitled " An act to carry into effect cer-

tain stipulations of the treaty between the United States and the Republic of Mexico, of the 2d February, 1848," had made an award in his favor for the sum of $86,786$\frac{29}{100}$, which sum was then in the hands of the secretary of the treasury of the United States. He then alleges that, being a resident of the State of New Hampshire, he filed in the clerk's office of that district, on the 28th January, 1843, his petition to be declared a bankrupt. That he had been declared a bankrupt on the 22d March following, pursuant to the "act to establish an uniform system of bankruptcy throughout the United States," passed August 19, 1841. He then recites that there had been attached to his petition in the bankrupt's court, a schedule of his property, rights, and credits of every kind and description, in which his Mexican claim had been stated; and that it was upon that claim the commissioners had awarded to him the sum before mentioned. He declares that, under the decree of the court in bankruptcy, one John Palmer had been appointed assignee; and that, having given his bond in compliance with the order of the court, he was vested, as assignee, in virtue of the operation of the bankrupt law, of all the defendant's property, for the benefit of his creditors, including the Mexican claim. It is also stated in his answer, that notice of all the proceedings in his matter of bankruptcy had been published in the leading newspapers of New Hampshire, and that the name of Juan de la Camara, and his residence, was placed among the list of his creditors attached to his petition to be declared a bankrupt. And he avers that all of his creditors had had notice of the proceedings in bankruptcy. That neither Camara nor any other creditor had filed or made any objections to those proceedings, or to the action of the assignee, until after the award had been made upon the Mexican claim.

It is not necessary, for the purposes of this opinion, to state the defendant's recital of the sale of his effects by Palmer, the assignee; his purchase of them, including the Mexican claim, or the rights claimed by the defendant under his purchase, all relating to the same having been fully acted upon by this court at this term, in the case of Ferdinand Clark v. Benjamin C. Clark and W. H. Y. Hackett. We state, however, that Palmer, the original assignee in Clark's bankruptcy, having died, he had been succeeded by the appointment of Hackett as assignee. This suit, then, is substantially between Hackett, as the assignee of Clark in bankruptcy, and Booth, the receiver under Camara's creditor's bill; that it may be determined by this court which of them has the official right to the Mexican fund, for the distribution of it between the creditors of Clark, or whether Booth, as receiver, shall have from that fund a sufficient sum to pay

28*

Camara's entire debt, leaving the residue of it for distribution between Clark's other creditors.

It appears also from the record that Booth, the receiver, took no steps to execute his official trust, from the time of his appointment in 1842, until 1851, after the award of the Mexican claim had been made in Clark's favor. And, also, that the court of chancery, acting upon the creditor's bill brought by Camara, had not been applied to, either by Camara or by the receiver, for any order upon Clark *in personam*, to coerce his compliance with its injunction and decree.

Upon this statement of the case we will now consider it. There is no dispute concerning the regularity or binding operation of the judgment obtained by Camara against Clark. None in respect to the proceedings under the creditor's bill. The leading point in the case is the effect of the proceedings under the last, to give a right to the receiver, in virtue of a lien which he claims upon the property of the debtor, to sue for and to recover any part of it, legal or equitable, without the jurisdiction of the State of New York. In other words, as an officer of a court of chancery, for a particular purpose, will he be recognized as such by a foreign judicial tribunal, and be allowed to take from the latter a fund belonging to a debtor, for its application to the payment of a particular creditor within the jurisdiction of the receiver's appointment, there being other creditors in the jurisdiction in which he now sues, contesting his right to do so. Or can he as receiver claim, in virtue of a decree upon a creditor's bill given in one jurisdiction, a right to have the judgment upon which the creditor's bill was brought paid out of a fund of a bankrupt debtor in a foreign jurisdiction; because his appointment preceded the bankrupt's petition.

It is urged that the receiver in this case, by the decree of the court in New York, was entitled officially to the entire property of Clark, real, personal, or equitable, both within and without the State of New York. That he could, as receiver, maintain any action for the property and rights of property of the debtor which the latter could have done. That the fund now in controversy was a *chose in action* belonging to the debtor when the receiver was appointed, and, though not within the State of New York, that it followed the person of the owner and passed to the receiver, because the owner was domiciled in New York. And it was also said that, having such official rights or liens upon the property of the debtor, the comity of nations would aid him in the assertion of them in a foreign tribunal. The counsel for the receiver cited from the reports of the State of New York several cases in support of the foregoing propositions. We have perused all of them carefully, without having been

able to view them altogether as the learned counsel does. Whatever may be the operation of the decree in respect to the receiver's powers over the property of the debtor within the State of New York, and his right to sue for them there, we do not find any thing in the cases in the New York reports showing the receiver's right to represent the creditor or creditors of the debtor in a foreign jurisdiction. It is true that the receiver in this case is appointed under a statute of the State of New York, but that only makes him an officer of the court for that State. He is a representative of the court, and may by its direction take into his possession every kind of property which may be taken in execution, and also that which is equitable,-if of a nature to be reduced into possession. But it is not considered in every case that the right to the possession is transferred by his appointment, for where the property is real, and there are tenants, the court is virtually the landlord, though the tenants may be compelled to attorn to the receiver. Jeremy's Equity Jurisprudence, 249. When appointed, very little discretion is allowed to him, for he must apply to the court for liberty to bring or defend actions, to let the estate, and in most cases to lay out money on repairs, and he may without leave distrain only for rent in arrear short of a year. 6 Vesey, 802 ; 15 Ib. 26 ; 3 Bro. C. C. 88 ; 9 Ves. 335 ; 1 Jac. and W. 178 ; Morris and Elme, 1 Ves. jun. 139 ; 1 Ib. 165 ; Blunt and Clithero, 6 Ves. 799 ; Hughes and Hughes, 3 Bro. C. C. 87 ; 5 Madd. 473.

A receiver is an indifferent person between parties, appointed by the court to receive the rents, issues, or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it. Wyatt's Prac. Reg. 355. He is an officer of the court ; his appointment is provisional. He is appointed in behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause. The money in his hands is in *custodia legis* for whoever can make out a title to it. Delany v. Mansfield, 1 Hogan, 234. It is the court itself which has the care of the property in dispute. The receiver is but the creature of the court ; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court ; Verplanck v. Mercantile Insurance Company, 2 Paige, C. R. 452. Unless where he is appointed under the statute of New York directing proceedings against corporations, (2 R. S., 438,) and then he is a standing assignee, vested with nearly all the powers and authority of the assignee of an insolvent debtor. Attorney-General v. Life and Fire Insurance Co. 4 Paige, C. R., 224. In the case just cited, Chancellor Walworth says, that

the receiver has "no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court." In the statement which has been made of the restraints upon a receiver, we are aware that they have been measurably qualified by rules, and by the practice of the courts in the State of New York, as may be seen in Hoffman's Practice; but none of them alter his official relation to the court, and, so far as we have investigated the subject, we have not found another instance of an order in the courts of the State of New York, or in the courts of any other State, empowering a receiver to sue in his own name officially in another jurisdiction for the property or *choses in action* of a judgment debtor. Indeed, whatever may be the receiver's rights under a creditor's bill, to the possession of the property of the debtor in the State of New York, or the permissions which may be given to him to sue for such property, we understand the decisions of that State as confining his action to the State of New York.

Such an inference may be made from several decisions. It may be inferred from what was said by Chancellor Walworth, in Mitchell *v.* Bunch, 2 Paige C. R. 615. Speaking of the property which might be put into the possession of a receiver, and of the power of a court of chancery to reach property out of the State, he declares the manner in which it may be done, thus: "The original and primary jurisdiction of that court was *in personam* merely. The writ of assistance to deliver possession, and even the sequestration of property to compel the performance of a decree, are comparatively of recent origin. The jurisdiction of the court was exercised for several centuries by the simple proceeding of attachment against the bodies of the parties to compel obedience to its orders and decrees. Although the property of a defendant is beyond the reach of the court, so that it can neither be sequestered nor taken in execution, the court does not lose its jurisdiction in relation to that property, provided the person of the defendant is within the jurisdiction. By the ordinary course of proceeding, the defendant may be compelled either to bring the property in dispute, or to which the defendant claims an equitable title, within the jurisdiction of the court, or to execute such a conveyance or transfer thereof as will be sufficient to vest the legal title, as well as the possession of the property, according to the *lex loci rei sitæ.*" It is very obvious, from the foregoing extract, that up to the time when Mitchell *v.* Bunch was decided, in the year 1831, it had not been thought that a court of chancery in the State of New York could act upon the property of a judgment debtor in a creditor's bill which was not within the State of New York, but by the coercion of his person when he was within the jurisdiction of the State;

and that it had not been contemplated then to add to the means used by chancery to enforce its sentences, in respect to property out of the State of New York, the power to a receiver to sue in a foreign jurisdiction for the same. It is true that the jurisdiction of a court of chancery in England and the United States, to enforce equitable rights, is not confined to cases where the property is claimed in either country, but the primary movement in the chancery courts of both countries to enforce an injunction is the attachment of the person of the debtor, where he is amenable to the jurisdiction of the court.

We find in the 2d volume of Spence on the jurisdiction of the court of chancery in England, (6, 7,) this language: When, therefore, a case is made out against a person resident within the jurisdiction of the court, in respect to property out of it, but within the empire, or its dependencies, which would call for the interference of the court of chancery if the property were situate in the country, the court, as it had the power, has assumed the jurisdiction, when such an interference is necessary to the ends of justice, of enforcing the equitable rights of the parties to or over property out of its jurisdiction, by the coercion of the person and sequestration of his property here, in the same manner as it would have done had the property been situate in this country. And Sir John Leach said: " When parties defendants are resident in England, and are brought upon subpœna here, the court has full authority to act upon them personally, with respect to the subject of the suit, as the ends of justice require, and with that view to order them to take or to omit to take any steps or proceedings in any other court of justice, whether in this or in a foreign country. This court does not pretend to any interference with the other courts." It acts upon the defendant by punishment for his contempt, for his disobedience of the court. The court of chancery has no power directly to affect property out of the bounds of its jurisdiction. Roberdeau *v.* Rous, 1 Atk. 544 ; 2 Spence. We believe such to be the proper course, in chancery, in cases of injunction, and that its jurisdiction, by injunction, rests entirely on the coercion of the person. Such, however, was not the course pursued in this case, though the debtor was then a resident of the State of New York, and amenable to the jurisdiction of the court. No motion was made to force Clarke to comply with the injunction which Camara had obtained under the creditor's bill. The matter was allowed to rest for seven years, Camara being aware that Clarke had a pecuniary claim upon the Republic of Mexico, at least as early as in the year 1843. The receiver during all that time took no action. His first movement is an application to be permitted to sue for the fund in the hands of the government, which had been awarded to Clarke by the commissioners under the treaty

with Mexico. Permission was given to sue. He has brought his bill accordingly, and it directly raises the question, whether he can, as an officer of the court of chancery in New York, and in his relation of receiver to Camara, be permitted to sue in another political jurisdiction.

We have already cited Chancellor Walworth's opinion as to the course which is to be pursued in New York upon an injunction in a creditor's bill. Mr. Edwards, in his excellent work on receivers in chancery, after citing the language used in Mitchell v. Bunch, says : " Still, the difficulty remains as to a recognition of the powers or officers of the court, by persons holding a lease upon the property, especially realty, out of the jurisdiction. Then in Malcolm v. Montgomery, 1 Hogan, 93, the master of the rolls observed, that a receiver could not be effectually appointed over estates in Ireland, by the English court of chancery, in any direct proceeding for the purpose ; and that attempts had often been made to do so by serving orders made by the English court of chancery, but that they had failed, because the English court of chancery has no direct means of enforcing payment of rent to its receiver, by tenants who reside in Ireland. The attorney-general and another counsellor also said, that to their knowledge such attempts had been frequently made, but had been uniformly given up as impracticable. A conflict might also arise between the receiver out of the jurisdiction and creditors, and also other persons out of the jurisdiction. The comity of nations and different tribunals would hardly help a receiver."

We also infer, from the case of Storm and Waddell, in 2 Sandford, 494, that the receiver's right to the possession of the property of a debtor in the State of New York, and his right to sue for property there, is limited to that jurisdiction. The chancellor, in the last case mentioned, after having given an epitome of the cause of proceeding in a creditor's bill, and speaking of equitable interests and things in action belonging to the debtor, without regard to the injunction, says : " The property of the defendant is subjected to the suit, wherever it may be, if the receiver can lay hold of it, or the complainant can reach it by the decree. The injunction, when served, prevents the debtor from putting it away or squandering it." This language indicates the receiver's locality of action. Taken in connection with that of Chancellor Walworth, in Mitchell v. Bunch, it shows that the receiver's right to the possession of the debtor's property is limited to the jurisdiction of his appointment, and that he has no lien upon the property of the debtor, except for that which he may get the possession of without suit, or for that which, after having been permitted to sue for, he may reduce into possession in that way. Our industry has been tasked unsuccess-

Booth *v.* Clark.

fully to find a case in which a receiver has been permitted to sue in a foreign jurisdiction for the property of the debtor. So far as we can find, it has not been allowed in an English tribunal; orders have been given in the English chancery for receivers to proceed to execute their functions in another jurisdiction, but we are not aware of its ever having been permitted by the tribunals of the last.

We think that a receiver has never been recognized by a foreign tribunal as an actor in a suit. He is not within that comity which nations have permitted, after the manner of such nations as practise it, in respect to the judgments and decrees of foreign tribunals, for all of them do not permit it in the same manner and to the same extent, to make such comity international or a part of the laws of nations. But it was said that receivers in New York are statutory officers, as assignees in bankruptcy are. That being so, he had, as assignees in bankruptcy have upon the property of the bankrupt, a lien upon the property of a judgment debtor, under an appointment in a creditor's bill. But that cannot be so. An assignee in bankruptcy in England, and in this country when it had a bankrupt law, is an officer made by the statute of bankruptcy, with powers, privileges, and duties prescribed by the statute, for the collection of the bankrupt's estate for an equal distribution of it among all of his creditors.

In England, the property of the bankrupt is vested in the assignees in bankruptcy by legislative enactment. Where commissioners have been appointed, it is imperative upon them to convey to the assignees the property of the bankrupt, wherever it may be or whatever it may be, and it is done by deed of bargain and sale, which is afterwards enrolled. It vests the assignees with the title to the property from the date of the conveyance, it having been previously vested in the commissioners for conveyance by them to the assignees. As to the bankrupt's personal estate, the statute looks beyond the debts and effects of a trader within the kingdom, and vests them in the commissioners in every part of the world. The last is done in England, upon the principle that personal property has no locality, and is subject to the law which governs the person of the owner. As by that law the property of a bankrupt becomes vested in the assignee, for the purposes of the assignment, his title to such property out of England is as good as that which the owner had, except where some positive law of the country, in which the personal property is, forbids it. Cullen, 244.

In claiming such a recognition of assignees in bankruptcy from foreign courts, England does no more than is permitted in her courts, for they give effect to foreign assignments made

under laws analogous to the English bankrupt laws.   Solomons *v.* Ross, 1 H. B. 131, n.; Jollet *v.* Deponthieu, Ib. 132, n.   But such comity between nations has not become international or universal.   It was not admitted in England until the middle of the last century in favor of assignees in bankruptcy.   Lord Raymond decreed it in 1811, in the case of a commission of bankruptcy from Holland.   Sir Joseph Jekyll, in 1715, said, the law of England takes no notice of a commission in Holland, and therefore a creditor here may attach the effects in the city of London, and proceed to condemnation.  3 Burge, 907.   Lord Mansfield, in Warring *v.* Knight, (sittings in Guildhall, after Hilary term, Geo. III., Cooke's Bank. Laws, 300, 3 Burge, 907,) ruled, that where an English creditor proceeded, subsequent to an act of bankruptcy, by attachment in a foreign country, and obtained judgment there and satisfaction by the sale of the debtor's personal property, the assignees in an action in England could not recover from such creditor the amount of the debt which had been remitted to him.   Again, his lordship ruled, that the statutes of bankrupts do not extend to the colonies or any of the king's dominions out of England, but the assignments under such commissions are, in the courts abroad, considered as voluntary, and as such take place between the assignee and the bankrupt, but do not affect the rights of any other creditors.

So the law stood in England until the case of Folliott *v.* Ogden, 1 H. Bl. 123, when Chancellor Northington stimulated it into a larger comity, by giving effect to a claim to the creditors of a bankrupt in Amsterdam over an attaching creditor in England, who had proceeded after the bankrupt had been declared to be so, by the proper tribunal in Amsterdam.   England had just then become the great creditor nation of Europe, and of her provinces in North America.   Her interest prompted a change of the rule, and her courts have ever since led the way in extending a comity which had before been denied by them. The judicial history of the change, until the comity in favor of assignees became in England what it now is, is given in 3 Burge, ch. 22; Bankrupt Laws, 886, 906 – 912, inclusive, and from 912 – 929.   It may now be said to be the rule of comity between the nations of Europe; but it has never been sanctioned in the courts of the United States, nor in the judicial tribunals of the States of our nation, so far as we know, and we know that it has been repeatedly refused in the latter.   Our courts, when the States were colonies, had been schooled, before the Revolution, in the earlier doctrines of the English courts upon the subject.   The change in England took place but a few years before the separation of the two countries.

That comity has not yet reached our courts. We do not know why it should do so, so long as we have no national bankrupt laws. The rule which prevailed whilst these States were colonies still continues to be the rule in the courts of the United States, and it is not otherwise between the courts of the States. It was the rule in Maryland, before the Revolution. It is the rule still, as may be seen in Birch *v.* McLean, 1 Harris and McHenry, 286; Wallace *v.* Patterson, 2 H. and McHenry, 463. An assignment abroad, by act of law, has no legal operation in Pennsylvania. We find from McNeil and Colquhoon, 2 Haywood, 24, that it has been the rule in North Carolina for sixty years. South Carolina has no other. 3 Const. Rep. S. C. 283; 4 McCord, 519; Taylor *v.* Geary, Kirby, 313. In Massachusetts, the courts will not permit an assignment in one of the States, whether it be voluntary or under an insolvent law, to control an attachment in that State of the property of an insolvent which was laid after the assignment, and before payment to the assignees. The point occurred recently in the circuit court of the United States for that district, in the case of Betton, assignee, *v.* Valentine, 1 Curtis, 168; and it was ruled that the assignee of an insolvent debtor, appointed under the law of Massachusetts, does not so far represent creditors in the State of Rhode Island as to be able to avoid a conveyance of personal property in the latter State, good as against the insolvent, but invalid as against creditors, by the law of Rhode Island.

In New York, the "ubiquity of the operation of the bankrupt law, as respects personal property," was denied in Abraham *v.* Plestoro, 3 Wend. 538. Chancellor Kent considers it to be a settled part of the jurisprudence of the United States, that a prior assignment under a foreign law will not be permitted to prevail against a subsequent attachment of the bankrupt's effects found in the United States. The courts of the United States will not subject their citizens to the inconvenience of seeking their dividends abroad, when they have the means to satisfy them under their own control. We think that it would prejudice the rights of the citizens of the States to admit a contrary rule. The rule, as it is with us, affords an admitted exception to the universality of the rule that personal property has no locality, and follows the domicile of the owner. This court, in Ogden *v.* Saunders, 12 Wheat. 213, disclaimed the English doctrine upon this subject; and in Harrison *v.* Sterry, 5 Cranch R. 289, 302, this court declared that the bankrupt law of a foreign country is incapable of operating a legal transfer of property in the United States.

Such being the rule in the American courts, in respect to

foreign assignments in bankruptcy, and in respect to such assignments as may be made under the insolvent laws of the States of the United States, there can be no good reason for giving to a receiver, appointed in one of the States under a creditor's bill, a larger comity in the courts of the United States, or in those of the States or Territories. On the contrary, strong reasons may be urged against it. A receiver is appointed under a creditor's bill for one or more creditors, as the case may be, for their benefit, to the exclusion of all other creditors of the debtor, if there be any such, as there are in this case. Whether appointed as this receiver was, under the statute of New York, or under the rules and practice of chancery as they may be, his official relations to the court are the same. A statute appointment neither enlarges nor diminishes the limitation upon his action. His responsibilities are unaltered. Under either kind of appointment, he has at most only a passive capacity in the most important part of what it may be necessary for him to do, until it has been called by the direction of the court into ability to act. He has no extra territorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek.

In those countries of Europe in which foreign judgments are regarded as a foundation for an action, whether it be allowed by treaty stipulations or by comity, it has not as yet been extended to a receiver in chancery. In the United States, where the same rule prevails between the States as to judgments and decrees, aided as it is by the first section of the 4th article of the constitution, and by the act of congress of 26th May, 1790, by which full faith and credit are to be given in all of the courts of the United States, to the judicial sentences of the different States, a receiver under a creditor's bill has not as yet been an actor as such in a suit out of the State in which he was appointed. This court considered the effect of that section of the constitution, and of the act just mentioned in McElmoyle and Cohen, 13 Pet. 324 – 327. But apart from the absence of any such case, we think that a receiver could not be admitted to the comity extended to judgment creditors, without an entire departure from chancery proceedings, as to the manner of his appointment, the securities which are taken from him for the performance of his duties, and the direction which the court has over him in the collection of the estate of the debtor, and the application

and distribution of them. If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official accountability. All that could be done upon such an application from a receiver, according to chancery practice, would be to transfer him from the locality of his appointment to that where he asks to be recognized, for the execution of his trust in the last, under the coercive ability of that court; and that it would be difficult to do, where it may be asked to be done, without the court exercising its province to determine whether the suitor, or another person within its jurisdiction, was the proper person to act as receiver.

Besides, there is much less reason for allowing the complainant in this case to be recognized as receiver for the fund out of the State of New York, and in this jurisdiction, even if the practice in chancery in respect to receivers was different from what we have said it was. The remedies which the judgment creditor in New York had under his creditor's bill against his debtor, were not applied as they might have been in that State, according to the practice in chancery in such cases. When Clark had been enjoined under the creditor's bill, and the receiver had been appointed, both judgment creditor and receiver knew at the time, — certainly, as the record shows, in a short time afterwards, — that Clark had a pecuniary claim upon the Republic of Mexico. No attempt was made, according to chancery practice, to coerce Clark by the attachment of his person under the injunction, to make an assignment of that claim for the payment of Camara's judgment. It cannot be said that Clark had not property to assign, and that it was therefore unnecessary to attach him. That would make no difference; for whether with or without property, he might have been compelled to make a formal assignment, even though he had sworn that he had none. It was so ruled in Chipman *v.* Sabbaton, 7 Paige, C. R. 47, and in Fitzburgh *v.* Everingham, 6 Paige, 29.

There was a want of vigilance in this matter, which does not make any equity which he may have in New York upon Clark's property, superior to that of Clark's creditors, who are pursuing the funds in this district. Nor, according to the rule prescribed in the United States, that personal property has no locality on account of the domicile of the owner, to transfer it under a foreign assignment, can the receiver have in this case any thing in the nature of a lien to bind the property of Clark not within the State of New York. When we take into consideration also the origin of the fund in controversy, the manner of its

ultimate recovery from Mexico, the congressional action upon it, in every particular, to secure it, after the awards were made, to those who might be entitled to receive it; the jurisdiction given to the circuit court of this district, with an appeal from its decision to this court, upon the principles which govern courts of equity to adjudge disputes concerning it, and that such cases were to be conducted and governed in all respects as in other cases in equity, we must conclude that the complainant in this case, as receiver, cannot be brought under the rule prescribed for our decision. We concur with the court below in the dismission of the bill.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby affirmed with costs.