### SEMMES v. UNITED STATES.

1. The power of amending a writ of error returnable to the Circuit Court is vested in that court as fully as it is in the Supreme Court on writs of error returnable to it.
2. The judgment of the Circuit Court ought not to be reversed for defects of form in the process returnable on error to that court, which are amendable by the express words of an act of Congress.
3. The proclamation of the President of the United States, bearing date Sept. 7, 1867, did not work the dismissal of legal proceedings against property seized under the confiscation act of July 17, 1863, or provide for the restoration of all rights of property to persons engaged in the rebellion.
4. Property so seized became the property of the United States from the date of the decree of condemnation.
5. The writ of error vested the Circuit Court with complete jurisdiction; and that court having reversed the second decree of the District Court, dismissing the libel, and adjudged that the first decree condemning the property should remain in full force, might " proceed to pass such decree as should have been passed." by the subordinate court; and, if a decree confirming the sale of the property was necessary, it was entirely competent for the Circuit Court to pass it.

ERROR to the Circuit Court of the United States for the District of Louisiana.

The facts are stated, and the assignment of errors is referred to, in the opinion of the court.

Submitted on printed arguments by *Mr. Thomas J. Semmes,* in *propria persona,* and *Mr. Robert Mott,* for the plaintiff in error, and by *Mr. Solicitor-General Phillips* and *Mr. Assistant Attorney-General Edwin B. Smith* for the defendant in error.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Proceedings *in rem* were instituted in the District Court on the 7th of August, 1863, under the confiscation act of the 17th of July, 1862, against certain real property of the respondent; which proceedings resulted, on the 5th of April, 1865, in the condemnation of the property described in the libel. On the 11th of the same month a writ of *venditioni exponas* was issued, commanding the marshal to sell the property on the 18th of the same month; but the marshal did not sell the same on that day, for the reason, as appears by his return, that the best price bid at the time and place of the sale did not amount to two-thirds of the appraised value of the property; and, for the reason stated, the marshal withdrew the property from sale, and again advertised the same for sale, as directed by the prior order of the court.

Two lots of land were embraced in the libel and the decree of condemnation, which, in fact, were not the property of the respondent. Accordingly, the true owner of the same in the mean time — to wit, on the 2d of May, 1865 — filed a petition in the same court, setting forth his right to the two lots in question, and stating that they were improperly advertised for sale by the marshal, and prayed the court to open the decree to allow him to assert his title.

Consent in writing to that effect having been given by the district attorney, the court subsequently entered a decree opening the decree of condemnation *for the purpose of* enabling the petitioner to submit to the court his claim to those lots, as evidenced by the proofs on file. Pursuant thereto, the court, on the 31st of May in the same year, rendered judgment, restoring those two lots to the intervenor, as claimed in his petition.

Such correction of the decree of condemnation having been made, the return of the marshal shows that he sold the residue of the lots condemned, in pursuance of the second advertisement, to E. W. Burbank, for the amount specified in the record, and that he paid the money over to the clerk of the court.

On the 4th of March, 1868, the respondent having first suggested that the decree of condemnation had been opened, and that a portion of the property libelled had never been condemned by any subsequent decree, moved the court to set aside the default against him, and for leave to file his claim and answer. Hearing was had on the motion, and the court ordered that the purchaser of the property should be made a party to the rule. Burbank, the purchaser, accordingly appeared, and filed an exception to the rule, that his rights as purchaser could not be questioned in such a form of proceeding, and offered in evidence the deed of the marshal and the decree of condemnation, together with the writ of *venditioni exponas*. Both parties were again heard; and the court, on the 15th of April in the same year, overruled the exceptions of the purchaser, and set aside the default of the respondent, and granted him leave to file his claim and answer.

Leave to that effect having been granted, the respondent filed his answer, alleging his ownership of the property, the insufficiency of the allegations contained in the libel, and denied that the President ever authorized the seizure of his property, and averred that he had been pardoned by the President, and that he was included in the general amnesty proclamation. Proofs were introduced; and the court, on the 27th of June following, entered a final decree, dismissing the libel, and restoring the property to the respondent upon the payment of all costs.

Proper steps were taken in behalf of the United States to sue out a writ of error, and the cause was by the United States removed into the Circuit Court, where the decree of the District Court was in all things reversed, and a decree entered in favor of the United States, that the decree of condemnation originally pronounced by the District Court stand and remain in full force and effect, and that the sale made by virtue thereof do stand confirmed. Whereupon the respondent sued out a writ of error, and removed the cause into this court.

Certain formal errors are assigned as follows, which will first be considered : —

1. That the writ of error from the Circuit Court to the District Court was made returnable on the first Monday of December, instead of the first Monday in November, as it should have been; and because the writ of error was not returnable in accordance with the order allowing the same, nor according to the citation.

2. Errors affecting the merits are also assigned, as follows: (1.) That the President had by his proclamation of amnesty dismissed all proceedings against any person or his property, engaged, or in any manner implicated, in the rebellion.   (2.) That, the original decree having been opened, the property of the respondent could not be sold at all, as there was no subsisting decree of condemnation.   (3.) That the sale to the purchaser was null, because it was not made on the day specified in the writ of *venditioni exponas*.   (4.) That the Circuit Court had no authority to confirm the sale to the purchaser.   (5.) That the special pardon as well as the amnesty proclamation entitled the respondent to a restoration of his property in case the sale by the marshal was null and void.

1. Evidently the alleged preliminary defect is one of form, and it is equally clear that the power to amend all process returnable to the Circuit Court is vested in that court as fully as it is in the Supreme Court; and the express provision is that the Supreme Court may allow an amendment of a writ of error when there is a mistake in the title of the writ or a seal to the writ is wanting, or when the writ is returnable on a day other than the day of the commencement of the term next ensuing; and, by the true construction of the provision upon the subject, the same power of amendment is vested in the Circuit and District Courts in all cases where the process is returnable in those respective courts.   17 Stat. 197.   *Hampton* v. *Rouse*, 15 Wall. 686.

Grave doubts are also entertained whether the supposed error would avail the respondent, even if no such act of Congress had been passed, as it appears that the copy of the writ lodged with the clerk of the District Court was correct, and that the transcript of the record of the case was actually made out,

returned, and filed in the Circuit Court, before the commencement of the term of the Circuit Court next ensuing. Such being the fact, the better opinion is that the supposed defect is now wholly immaterial.

Suppose, however, it is otherwise: still the court here is of the opinion that the decree of the Circuit Court ought not to be reversed for a defect of form in the process which is amendable by the express words of an act of Congress, unless it appears that the alleged defect may have injured the complaining party, or that he would have been prejudiced if the defect had been amended.

2. Nor is it correct to suppose that legal proceedings against the property of the respondent were dismissed by the amnesty proclamation, or that the amnesty proclamation provided for the restoration of all rights of property to persons engaged in the rebellion. On the contrary, the proclamation referred to contains the express exception " as to property with regard to slaves," and " in cases of legal proceedings under the laws of the United States." 15 Stat. 700.

Suffice it to remark, that a decree of condemnation in due form of law was entered in this case nearly two years and a half before the amnesty proclamation was issued, which shows to a demonstration that the property in controversy in this case falls within the exception contained in that proclamation; which is all that need be said upon that subject.

3. Sufficient appears in the record to show that the decree was never opened except for the special purpose of allowing the true owner of the two specified lots to file his claim and answer to that part of the libel, as authorized in the written stipulation signed by the district attorney. Argument to show that the true owner of those lots, without such consent in writing, would have been remediless, is unnecessary; and it is equally certain that the court could not open the decree three years after it was entered for any other purpose than that specified in the written stipulation, and the record shows that it never was attempted to be opened for any other purpose. Viewed in the light of the actual facts disclosed in the record, the assignment of error in that regard is utterly destitute of merit.

4. Properties condemned as forfeited to the United States,

under the aforesaid act of Congress, become the property of the United States from the date of the decree of condemnation. 12 Stat. 591, sect. 7.

Judgment of forfeiture was rendered in this case on the 5th of April, 1865, and the land in question became from that date the property of the United States; and it may well be contended, that, from that time, it could not concern the respondent whether the proceedings of the marshal in selling the same were regular or irregular, as the title to the land was lost to him when it became vested in the United States. He now contends that the sale is null, because it was not made on the day named in the writ of *venditioni exponas;* to which the United States make answer, that he cannot be heard to raise that question, as his title was divested by the decree of condemnation. But it is not necessary to rest the decision upon that ground, as it is well-settled law that the marshal, in the exercise of a sound discretion, may adjourn the sale in such a case to another day; and the court is of the opinion that the circumstances disclosed in the record were of a character to fully justify the marshal in the course which he pursued. *Blossom* v. *Railroad*, 3 Wall. 209; *Collier* v. *Whipple*, 13 Wend. 229; *Requa* v. *Rea*, 2 Paige, 339.

5. Beyond doubt, the original decree of the District Court was complete and correct; and it is doubtless true that the decree of the Circuit Court reversing the second decree of the District Court, and adjudging that the first decree of the District Court should stand and remain in full force and effect, would have been sufficient without any decree confirming the sale by the marshal: but, even if the decree confirming the sale be regarded as an act of supererogation, it cannot render invalid what would have been valid without it.

Complete jurisdiction of the cause was vested in the Circuit Court by virtue of the writ of error; and the Circuit Court, having reversed the second decree of the District Court, might 'oceed to pass such decree as should have been passed " by the subordinate court; and it follows, that, if a decree confirming the sale was necessary, it was entirely competent for the Circuit Court to pass such a decree. 1 Stat. 85.

6. Such proceedings under the confiscation act in question

are justified as an exercise of belligerent rights against a public enemy, and are not, in their nature, a punishment for treason. Consequently, confiscation being a proceeding distinct from, and independent of, the treasonable guilt of the owner of the property confiscated, pardon for treason will not restore rights to property previously condemned and sold in the exercise of belligerent rights, as against a purchaser in good faith and for value. *Miller* v. *United States*, 11 Wall. 267; *Confiscation Cas.*, 20 id. 92; *Gay's Gold*, 13 id. 351.

By the seizure of the property, the District Court acquired jurisdiction to pass the decree of condemnation. All of the proceedings prior to and in the sale of the land were regular; and the assumption of power by the District Court, nearly three years subsequently, to restore the land, was wholly unauthorized, and was clearly error. Nor did the opening of the decree as to the two lots, not owned by the respondent, afford any justification for the action of the court in restoring the residue of the property, as it is settled law that a judgment may be good in part, and bad in part, — good to the extent it is authorized by law, and bad for the residue. *Bigelow* v. *Forest*, 9 Wall. 339; *Day* v. *Micou*, 18 id. 156; *Ex parte Lange*, 18 id. 163.

Much discussion of the special pardon is unnecessary, as it contained the provision that the respondent should not, "by virtue thereof," claim any property, or the proceeds of any property, that had been sold by the order, judgment, or decree of a court under the confiscation laws of the United States. Authorities to show that a pardon may be special in its character, or subject to conditions and exceptions, are quite unnecessary, as they are very numerous, and are all one way.

*Decree of the Circuit Court is affirmed.*