## In re BENEDICT.

### (District Court, E. D. Wisconsin. August 14, 1905.)

1. BANKRUPTCY—RECEIVERS—POWER TO ACT OUTSIDE OF DISTRICT.

Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 345 [U. S. Comp. St. 1901, p. 3421], which defines courts of bankruptcy and their jurisdiction "within their respective territorial limits," contains nothing which authorizes such a court to confer upon a receiver appointed thereunder, who is not vested with title to the bankrupt's property, the power to exercise his official functions in respect to such property in any other district, and under the general rule governing courts of equity and their receivers appointed in creditors' suits such receiver has no authority to act officially outside of the district of his appointment.

2. SAME—POWERS OF COURT OF BANKRUPTCY—APPOINTMENT OF ANCILLARY RECEIVER.

In view of the full equity powers conferred on courts of bankruptcy by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], so far as may be necessary to enforce the act, such courts may employ the procedure, writs, and remedies known to equity jurisprudence; and where, in involuntary proceedings, a receiver has been appointed, a District Court of another district in which property of the alleged bankrupt is situated has power to appoint an ancillary receiver to aid the court of original jurisdiction in preserving such property pending the selection of a trustee, the necessity of such appointment being shown.

In Bankruptcy. On petition for appointment of ancillary receiver.

This petition, signed and duly verified by three of the principal creditors of the alleged bankrupt, recites: First. The filing of an involuntary petition against the alleged bankrupt in the Northern District of Illinois. Second. The appointment of E. C. Day as receiver of the moneys, credits, and effects of the alleged bankrupt; and copies of the involuntary petition and proceedings are annexed showing the appointment and qualification of said Day as such receiver. Third. That the alleged bankrupt was conducting an extensive business, having branch stores in Wisconsin, and four such stores, containing a large amount of goods, are situate within the Eastern District of Wisconsin. Fourth. Prayer for the appointment of said Day as ancillary receiver here.

Bloodgood, Kemper & Bloodgood, for petitioners.

QUARLES, District Judge. The question raised by this application is one of interest to the profession, and of great importance in the administration of the present bankrupt act. Conflicting rulings have already been made in several courts of bankruptcy. Text-writers throw little light upon the subject, and I have therefore concluded, in deciding this application, to write an opinion, and collate the authorities upon the several propositions involved.

The primary purpose of the bankruptcy court, and its first duty in point of time, is to collect and bring into custody the assets of the estate, and preserve the same until a trustee is qualified to take title thereto. To this end the act of 1898 provides in case of necessity for the appointment of a receiver, who is practically a custodian. Section 2, subd. 3, Act July 1, 1898, c. 541, 30 Stat. 545 [U. S Comp. St. 1901, p. 3421]. The conditions now obtaining in every department of industry, and the wide scope of modern enterprise, render the prompt assembling of assets at once important and diffi-

cult. Business is largely conducted by great corporations, whose investments and operations are not confined to a single state or district, but often involve transactions and holdings in many states. When an involuntary petition is filed against such corporation, it is not uncommon that the assets are widely scattered. In the instant case the alleged bankrupt has stocks of goods in four different cities in this district. The several steps provided by the bankrupt act to secure an adjudication and the selection of a trustee involve considerable delay, although no opposition develops. This delay may be indefinitely prolonged by a demand for a jury trial and a final review by writ of error. Time must be allowed to assemble the creditors who are to select a trustee. From twenty days to four months may be designated as the usual period for these primary proceedings, although one case has been brought to my attention where two years were consumed in litigation before a trustee was chosen. In the meantime, what will become of these widely scattered assets situate beyond the territorial limits of the court of original jurisdiction? There seems to be no one whose duty it is to give any attention to such property. A dishonest bankrupt, having access, may dissipate or dispose of it, or entangle the title with liens and complications. It will be subjected to peril from theft as well as from fire, there being no custodian to protect or insure it. Unless some way can be devised under the bankrupt act to husband these scattered assets, the law discloses a structural weakness which seriously impairs its efficiency.

If the Illinois receiver could be authorized to proceed to this district and take possession of property which confessedly belongs to the alleged bankrupt, there would be no necessity for a resort to ancillary proceedings. Naturally, the first question for consideration is whether such receiver has extraterritorial authority. The difficulty encountered at the threshhold lies in the limitation placed by the bankrupt act upon the jurisdiction of the courts by the language, "within their respective territorial limits," etc. It is difficult to see how such jurisdiction, so qualified, can be enlarged by an order. Any act by such receiver in Wisconsin pursuant to such order would amount to an attempted exercise of jurisdiction outside the territorial limits. In other words, this limitation puts the court of bankruptcy and its receiver upon the same footing as to extraterritorial jurisdiction as the court of chancery operating through its receiver under a creditors' bill. It therefore becomes important to consult the law as to the status of a receiver thus appointed by a court of chancery when assuming to act outside territorial limits of the court appointing him. The Supreme Court of the United States considers this question with great ability and thoroughness in Booth v. Clark, 17 How. 327, 15 L. Ed. 164. In that case a receiver appointed under a creditors' bill in New York sought to possess himself of certain personal assets in the District of Columbia, and filed a bill for that purpose within the District, having been expressly authorized so to do by the court appointing him. The court hold that:

"He [the receiver] has no extraterritorial power of official action; none which the court appointing him can confer with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done," etc. "If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court the aid of which he seeks for his faithful conduct and official accountability."

In Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, Mr. Justice Peckham, delivering the opinion of the court, says: "We do not think anything has been said or decided in this court which destroys or limits the controlling authority of that case"— Booth v. Clark, supra.

In Great Western Mineral & Manufacturing Co. v. Harris, 25 Sup. Ct. 770, 49 L. Ed. 1163, Mr. Justice Day, delivering the opinion, fully sustains the authority and reasoning of this early case, and commits the court again to the doctrine that the receiver in whom the title to assets has not been vested, but who relies upon his authority as an officer of the court, has no authority to do any official act outside the jurisdiction of the court appointing him.

Therefore we conclude that the process and authority of the District Court for the Northern District of Illinois are entirely inoperative in this district, and do not warrant the Illinois receiver to discharge any official function whatever in this district.

The next question is whether this court may by ancillary proceedings appoint a receiver to aid the Illinois court in gathering up and protecting the assets of the alleged bankrupt within this district pending the proceedings looking to the selection of a trustee. This is a question that has been the source of much perplexity to the bar, and has elicited adverse judicial opinions, although I believe in practice ancillary jurisdiction has been generally exercised. The following are some of the cases under the act of 1898 where the existence of such jurisdiction has been doubted or denied: In re Schrom (D. C.) 97 Fed. 760; In re Williams (D. C.) 123 Fed. 322, 324; In re Tybo Mining Co. (D. C.) 132 Fed. 699; In re Williams (D. C.) 120 Fed. 38; Ross Meham Co. v. Southern Car Co. (D. C.) 124 Fed. 403. See, contra, In re Sutter Bros. (D. C.) 131 Fed. 654; In re Peiser (D. C.) 115 Fed. 199. It will be conceded that ancillary jurisdiction is not expressly provided for by the text of the act of 1898. Neither was it so expressly provided under the act of 1867 or 1841. Therefore the earlier decisions will prove instructive. This same question having arisen under the act of 1867, it was held in two cases that there was no warrant for ancillary jurisdiction. Marksan v. Heaney, 1 Dill. 497, Fed. Cas. No. 9,098; In re Richardson, Fed. Cas. No. 11,774. Thereafter the same question was considered by Mr. Justice Clifford in Sherman v. Bingham, 3 Cliff. 552, Fed. Cas. No. 12,762, with great learning and ability. The court say:

"Judges of the District Court must sit undoubtedly in the districts for which they are respectively appointed, and no doubt is entertained that the process

of the court in proceedings in bankruptcy cases is restricted to the territorial limits of the district; but the language of section 1 of the bankrupt act describing the jurisdiction of the District Courts sitting as courts of bankruptcy is that they shall have original jurisdiction in their respective districts 'in all matters and proceedings in bankruptcy.' * * * District Courts have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and the argument is that, inasmuch as the jurisdiction must be exercised in the district for which the District Judge is appointed, the District Court, sitting as a court of bankruptcy, cannot exercise jurisdiction in any case except in the district where the bankruptcy proceedings are pending; but section 1 of the bankrupt act contains no such limitation, nor does it contain any words which, properly considered, justify any such conclusion."

The court refers to an early case decided by Mr. Justice Story— Ex parte Martin, Fed. Cas. No. 9,149—and quotes the language of that distinguished jurist:

"On the contrary, it is not unnatural to presume that in cases originally instituted and pending in one district an assignee may apply to reach persons and property situate in other districts, and require auxiliary proceedings therein to perfect and accomplish the objects of the act. The intention of Congress was that the District Courts in every district should be mutually auxiliary to each other for such purposes and proceedings."

The court then say that this opinion of Mr. Justice Story was generally followed and concurred in by the courts of bankruptcy, and that there was no such difference in the text of the two acts (1867 and 1841) as to render the reasoning inapplicable, and the same is adopted as consistent with the scope and purposes of the act of 1867.

The case of Sherman v. Bingham seems to have been accepted as a correct exposition of the law in Re Tifft, 19 N. B. R. 201, Fed. Cas. No. 14,034.

In 1875, the attention of the Supreme Court of the United States was called to this question in Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414. On page 517, 91 U. S., 23 L. Ed. 414, the court say:

"Were it not for the words 'in their respective districts,' the jurisdiction would extend to matters of bankruptcy arising anywhere, without regard to locality. It is contended that these words confine it to cases arising in the district. But such is not the language. Their jurisdiction is confined to their respective districts, it is true; but it extends to all matters and proceedings in bankruptcy without limit. When the act says that they shall have jurisdiction in their respective districts, it means that the jurisdiction is to be exercised in their respective districts. Each court within its own district may exercise the powers conferred, but those powers extend to all matters of bankruptcy without limitation."

On page 518, 91 U. S., 23 L. Ed. 414, the court, continuing, say:

"Proceedings ancillary to and in aid of the proceedings in bankruptcy may be necessary in other districts where the principal court cannot exercise jurisdiction and it may be necessary for the assignee to institute suits in other districts for the recovery of assets of the bankrupt. That the courts of such other districts may exercise jurisdiction in such cases would seem to be the necessary result of the general jurisdiction conferred upon them, and is in harmony with the scope and design of the act."

This unanimous opinion of the court interpreting the former act is entitled to respect, and I believe that the same construction will be imposed upon the present act. This case is cited with approval

in Burbank v. Bigelow, 92 U. S. 182, 23 L. Ed. 542. See, also, Goodall v. Tuttle, 3 Biss. 220, Fed. Cas. No. 5,533.

It will be noticed that no case cited in support of the jurisdiction covers the power to appoint ancillary receivers. The reason is plain. The former acts failed to provide for any receiver or temporary custodian.

The procedure under Act March 2, 1867, c. 176, §§ 40–42, 18 Stat. 536, 537, provided for injunction to protect the property, and, if need be, the arrest of the bankrupt, and immediately upon adjudication a warrant issued to take possession of all assets. A comparison of section 1 of the act of 1867, 18 Stat. 517, and section 2 of the act of 1898, will demonstrate that the jurisdiction conferred upon Districts Courts by the latter is much more ample than under the former, especially as regards equitable jurisdiction. The present act, as amended, explicitly confers plenary jurisdiction of every contention that may properly arise in the administration of the act. To quote from the act, we find expressly conferred upon District Courts "such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings," etc.; among other things, "to cause estates of bankrupts to be collected," "to determine controversies in relation thereto," "to make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of this act." District Courts having been thus clothed with full equity powers, so far as may be necessary, to enforce the act, it follows that they may employ the procedure, writs, or remedies known to equity jurisprudence. Ancillary proceedings were early adopted by federal courts as appropriate and indispensable to bring property situate in several jurisdictions under control of the court of original jurisdiction; notably in foreclosure against railways extending into several states. By comity courts of equity in the several states have adopted the same practice, so that it has become familiar to the profession.

Objection is made, however, in one of the opinions above cited, that in adapting such practice to the bankrupt act at this stage of proceedings there is no adversary party upon whom process is served, and therefore no ground is laid for a judicial proceeding. At first blush, it would seem an anomaly to institute a judicial proceeding without process. It must be remembered, however, that this is strictly a proceeding in rem, contemplating only temporary control of certain property. A proceeding in bankruptcy is sui generis. The filing of an involuntary petition is not the commencement of a suit against the failing debtor to recover debts due. It contemplates rather the collection and distribution of an estate. Such proceedings do not abate by the death of the alleged bankrupt, occurring after the petition and before the adjudication. Re Hicks (D. C.) 107 Fed. 910; Re Spaulding (D. C.) 134 Fed. 507. Another fact must be kept in mind. The very property sought to be reached has been by virtue of the act of Congress brought sub modo under federal influence and control by the filing

of the involuntary petition, which has, so to speak, imposed a status upon all the property of the alleged bankrupt everywhere. Bank v. Sherman, 101 U. S. 400, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 1–16, 22 Sup. Ct. 269, 46 L. Ed. 405. Such petition, when filed, is held to be "a caveat to all the world," and to operate upon such assets like an attachment or injunction. Such legal result is not expressly provided for in the text of the law, but is predicated by the court upon the general scope of the act and the purpose of Congress.

If it was necessary to effectuate the purposes of the act to impose this status without regard to territorial limits, is it not equally in line with such legislative purpose to maintain such federal control to the end that all the assets, wherever situate, may remain intact until the trustee is invested with title thereto? This can only be done by co-operation among the several District Courts. This proceeding in no proper sense inaugurates a litigation, but culminates in a supplementary order. It finds support in the jurisdiction already vested in another court of bankruptcy to which it is ancillary. The receiver so appointed must account to, and be largely controlled by, the original court that is charged with the administration of the estate.

For these reasons I believe that an ex parte application is sufficient if it conclusively shows facts conferring jurisdiction upon the parent court. Such jurisdictional facts clearly appearing from this record, and it appearing to be a case where a receiver is indispensably necessary, the prayer of the petition should be granted.