GERMANIA BANK (SAVARY v.). See Case No. 12,387.

## Case No. 5,361.

GERMANIA INS. CO. v. LA CROSSE, ETC., PACKET CO.

[3 Biss. 501.][1]

District Court, E. D. Wisconsin. April, 1873.

DELIVERY BY CARRIER—WHAT CONSTITUTES—CUSTOM—CONDITION OF CARGO.

1. Where a cargo of wheat is shipped in bulk, to be delivered under a bill of lading to a consignee who has charge of an elevator at the port of destination, it is not a sufficient delivery to moor the barge at the dock of the elevator during bad weather, without notice to the consignee.

2. An alleged custom so to moor barges, leaving them to be taken charge of by the elevator, does not discharge the carrier.

3. The carrier must show satisfactorily that the cargo was in good order on arrival at its destination.

In admiralty. This was a libel in personam brought by several insurance companies to recover amounts paid by them respectively on policies of insurance on damaged wheat. The wheat had been shipped at Red Wing, Minnesota, on the steamboat Keokuk and barge Lucy, owned by respondent [the La Crosse & Minnesota Packet Company], to be delivered according to the bill of lading at La Crosse to ——— Whitney, or assigns, in good order, the unavoidable dangers of the river and fire excepted, he or they paying freight and charges. Whitney, the consignee, had charge of the elevator at La Crosse, and on unloading the wheat it was found to be damaged.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Mariner, Smith & Ordway, for libellants, cited Garrison v. Memphis Ins. Co., 19 How. [60 U. S.] 316; Oelricks v. Ford, 23 How. [64 U. S.] 63; McGregor v. Insurance Co. of Pennsylvania [Case No. 8,811]; Barnard v. Kellogg, 10 Wall. [77 U. S.] 388; Wadley v. Davis, 63 Barb. 500, Ostrander v. Brown, 15 Johns. 39; Gibson v. Culver, 17 Wend. 305; The Peytona [Case No. 11,058]; Clendaniel v. Tuckerman, 17 Barb. 184; Richardson v. Goddard, 23 How. [64 U. S.] 28; The Eddy, 5 Wall. [72 U. S.] 481.

Carys & Cottrill, for respondent.

MILLER, District Judge. It is alleged in the answer that the wheat was to be delivered at the elevator at La Crosse, and that on the arrival of the steamboat and barge at La Crosse the master and crew safely, properly and securely moored the barge Lucy, laden with the wheat, to the dock of the elevator at the usual and customary place for mooring barges whose cargoes were to be discharged at the elevator, and after the barge was so safely moored to the dock, the wind blowing fresh forced the barge laden with the wheat against the piles of the dock and caused the barge to leak and damage a portion of the wheat; and that the damage was caused by the unavoidable dangers of the river.

It is further averred in the answer that when the barge was caused to leak and damage the wheat, the voyage of the steamboat and barge had been fully completed and terminated, and that the cargo had been delivered at the port of La Crosse according to the terms of the bill of lading, and according to the custom of delivering cargoes of grain which were to be discharged at the elevator.

It appears in evidence that Whitney, mentioned in the bill of lading, was agent of the railroad company having charge of the elevator at La Crosse. Whitney's name appears in the bill of lading, as the course of business was to deliver all grain shipped in bulk to the elevator at La Crosse, the barges were moored at the dock at such place as entitled them to be discharged into the elevator in their order as to their time of arrival. When the barge's time for discharge came, the men in charge of the elevator loosed her from her mooring and brought her up to the proper position for discharge. The master of the "tow" considered his voyage at an end, and the stipulations of the bill of lading performed, upon mooring the barge at the dock; such seems to have been the loose manner of business at that point.

There is no satisfactory evidence that the wheat was in good order when the barge arrived at the dock. The master of the steamer very seldom went on board a barge, and if on board the Lucy on the trip, he did not make any examination into the condition of the wheat. The mate did not report water

in the hold, but he is not a witness in the case. One witness testifies that he was looking out for the Lucy; she arrived in the forenoon, and on that same forenoon the witness thinks the wheat was removed from the barge, immediately on its arrival at the elevator. The wheat was wet at the bottom. It may be that the barge had made water before arriving at the dock.

From the answer of the respondent and the evidence, the master and crew of the steamer left the barge in peril of the winds. The barge was made fast to the dock either in the midst of a blow or on the immediate approach of one, without regard to the safe delivery of the cargo. The master had no right, under those circumstances, to consider his voyage at an end. He was in fault even if the alleged custom was satisfactorily proven. Such neglect as this would be entirely inexcusable.

The alleged custom of mooring barges at the dock of the elevator and leaving them to be taken in charge of the elevator in turn, if proven to prevail in all cases, which it is not, would not excuse the carrier.

The bill of lading required the wheat to be delivered to Whitney at La Crosse. It is not alleged nor proven that there was notice to Whitney of the arrival of the barge with the cargo on board, or an offer to deliver the wheat to him. In order to relieve the carrier of responsibility, it should be made to appear at least that Whitney had such notice. The wheat was in no sense turned over to the custody of Whitney.

For these reasons a decree will be pronounced for libellants.