Johnson, J.
There is no bill of exceptions ; hence, if the facts stated in the petition, which are put in issue, entitled the receiver to the relief prayed for and granted, we must presume those facts were proved sufficient to warrant the judgment.
These facts are, in brief, that there were two mortgages on the railroad and its equipment, including the cars in controversy, the conditions of which had been broken; the company was insolvent; the property was insufficient to pay the mortgage debts, or to earn enough to pay the interest thereon.
In this condition of things, the trustees applied to a court of chancery in Kentucky, having jurisdiction of the subject-matter, for the appointment of a receiver. Pending this application, the plaintiff in error, a citizen of Kentucky, and within the jurisdiction of the court before whom the application was made, came to Ohio, and by attachment, founded on an unsecured claim against the railroad company, seized cars, covered by the deeds of trust, and now claims priority over the right of the receiver.
After this, the court in Kentucky made the appointment of a receiver, and clothed him with the powers stated. He was to take possession of the road, its equipment, franchises, &c., and to operate the same. He was vested with power to sue in his own name as receiver in all actions advised by counsel, necessary or proper in the discharge of his duties. This power to possess himself of the property of the road, and to operate the same, extended across the Ohio river, over the Newport bridge, to a connection with the Ohio roads at that point, and for that purpose invested him with the same powers as the president and directors of the company had under its charter, to make connections with roads in this state.
The conditions of both mortgages having been broken, the *180 right to the possession of the mortgaged property by the laws of Kentucky vested in the trustees, under the terms of the deeds of trust.
The right which the company had, to run its cars across the Newport bridge into this state, also vested in the trustees, and on their motion was conferred on the receiver. Instead of asserting, in person, this right, the trastees secured the appointment of a receiver, and had him clothed with all the powers they, as well as the corporation, possessed in the premises.
The temporary removal of these cars into Ohio by the company, pending the application for a receiver, did not divest the mortgagees of any rights to possession of the property, nor impair the power of the court over it.
The rights of the mortgagees under this mortgage will be determined by the lex loci oontraeius, when such contract is. not contrary to the policy of our laws, nor in conflict with the rights of our own citizens. In such a case our courts will by the law of comity enforce, the contract, and give it an extra-territorial operation. Thus, the mortgagee of chattel property under the laws of New York, may assert his rights against the mortgaged property found in Ohio. Kanaga v. Taylor, 7 Ohio St. 134.
This property, at the time it was seized in attachment, was in possession of the mortgagor, and was temporarily in Ohio, under a contract with the Cincinnati and Newport Bridge Company, but the right to the possession was in the trustees under their mortgages. If, instead of procuring the appointment of a receiver, they had, in person, asserted their right to the possession under the conditions of the mortgage, no one doubts that their right was paramount to the seizure under the attachment.
The right of the trustees under these mortgages, which are valid by the laws of both-states, can be asserted in Ohio, as fully as in Kentucky. The only limitation being, that the courts of Ohio, while allowing the comity of suit on a contract not in contravention of our laws or public policy, will protect the rights of our own citizens, and will not allow the principles *181 of comity, to defeat or impair those rights. Fuller v. Steiglitz, 27 Ohio St. 355; Bank of Augusta v. Earle, 13 Pet. 591; Shortwell v. Jewitt, 9 Ohio, 180; Oliver v. Townes, 14 Martin (La.) 93; Gaulaudet v. Hall, 35 N. Y. 657; Whart. on Conflict of Laws, §§ 364-369 ; Story on Conflict of Laws, §§ 244, 259.
The validity of these mortgages and of the appointment of the receiver of this corporation is clearly stated in Newport & Cin. Bridge Co. v. Douglas, 12 Bush, 673. The extent of the powers of the receiver to operate and control the road and its earnings under this appointment are there fully settled.
■ Counsel for plaintiff in error concede the extra-territorial rights of the owner of property, or of the mortgagee thereof, to maintain an action in the courts of a sister state, when the case comes within the exception stated, but deny that a receiver has any such power. The claim is, that the receiver acquired no title to the property in controversy, and had no power to bring an action in the state of Ohio, the order of the Louisville chancery court having no effect outside of the state of Kentucky.
Let it be assumed as settled by all the authorities that the order of the Kentucky court sitting in chancery, did not operate to confer or divest any title to property outside of that state. That is probably also true as to the title of property within that state. The receiver, when appointed by the court of chancery, did not acquire the title to the property, but only the right under orders of the court to possess and operate the same, as the trustees under the mortgage might have done, or as the court might direct.
Stripped of all collateral matters, the question is, has the receiver, in such a case, the legal capacity to possess himself of the property embraced in these mortgages. The general principle is: “ that the possession of the receiver is that of all parties to the suit, according to their titles. As between the owner and incumbrancers it is for some purposes the possession of the incumbrancers, who have obtained or extended the receiver; as between the owner whose *182 possession has been displaced and a third party it is the possession of the former.” High on Receivers, § 131, note 1. Thus in Horlock v. Smith, 2 Law Jour. N. S. 157, where a receiver was appointed of property mortgaged to A., and continued tb hold over after his discharge, it was held, that the possession of the receiver after* such discharge, was the possession of A.
The general proposition is well established that the receiver is the officer or agent of the court appointing him, for the benefit of whoever may be ultimately determined to be entitled to the property. In the case at bar, the fact was established, that the right of property was in the receiver, for the benefit of the incumbrancers, on whose motion he was appointed, and therefore, as between them and the owner, or the unsecured creditors, the possession is that of the incumbrancers. Thus it was held in Angel v. Smith, 9 Vesey, 337, that when the rights of the parties are ultimately determined, the possession of the receiver for the whole period, by relation, dates back to the time of the appointment, though, pending such determination, it be deemed the possession of the court for all parties interested.
Again, the possession of the receiver and his rights to possession, are exclusive. No one, not even the trustees under these mortgages, could interfere with this right. Having procured his appointment, and placed the property in the custody of the court, they would be estopped from asserting in person the right to enter upon and use the property, reserved to them in the conditions of their mortgages. Without authority of the court, no one has- the right, by execution, or otherwise, to interfere with the receiver’s possession. High on Receivers, §§ 135 to 156, and cases cited.
Again, the authority to bring actions is derived from the court appointing him, which may be conferred either by a general order or by special orders in particular cases. 2 Daniels Oh. Prae. 1751, note 7; Davis v. Gray, 16 Wall. 216-219. This is according to the weight of authority, though there are many well considered cases holding that a receiver has the right to sue, by virtue of his appointment, and the general *183 powers thereby conferred, without express authority for that purpose. 2 Daniels Oh. 1751, note 7, in brackets; Wray v. Jamison, 10 Humph. 186; Baker v. Cooper, 57 Maine, 388; High on Receivers, § 210.
In the case before us, the order of appointment authorizes the receiver to bring all necessary and proper actions in his own name as such, under the advice of counsel. So far as the court had power to do so, it has, by a general order, clothed the receiver with the right to bring this action. If the allegations of the petition are true, and in this proceeding, we must assume that they are, the action was a necessary and proper one, and was advised by counsel who represents the receiver. This right to sue in his own name is not controverted when applied to an action in Kentucky, but the claim is, that the authority to do so is confined to actions brought in Kentucky. In other words, that this right cannot, by the comity between states, be exercised in a sister state.
As the mortgage was valid in Ohio, and the property was insufficient to pay the debt, the equity of redemption, on which the attachment was levied, was valueless. The attaching creditor acquired no right or interest by the seizure, paramount to the mortgages. Had it appeared that an interest in the property was acquired by the seizure, a different and somewhat difficult question would have been presented, namely, would the Ohio court retain the property, until this interest was ascertained and protected ? If the attaching creditor was a citizen of Ohio, the principle, that our courts would protect its own citizens, would seem to apply, but treating the mortgages as valid, no such interest existed, or could be acquired by the levy of the attachment, as the property was insufficient to pay the debts secured by the mortgages.
Independent of the rights of any citizen of Ohio, will comity allow the receiver to maintain an action in Ohio, which he could bring in Kentucky? We think, that upon both principle and authority such an action may be maintained. The-nature of the Union between the states, as members of a common government, the vital interests which bind them together,, should lead us to presume a greater degree of comity in conu *184 mercial, as well as in political affairs, than we should be authorized to presume betweenstates wholly foreign to each other.
In Hurd v. City of Elizabeth, 41 N. J. L. 1, it was held, that a receiver appointed by a court of New York, clothed with authority to take the designated property wherever situate, may sustain a suit for such property in the courts of New Jersey. That was an action in that state to recover moneys, due a New York bank, of which the plaintiff was appointed receiver by a New York court. There, as here, the right to sue outside of New York was denied.
It is said, there are dicta that go to the extent of this :claim, but the correct rule is stated to be; “ That a receiver cannot sue or otherwise exercise his functions, in a foreign jurisdiction, whenever such acts, if sanctioned, would interfere with the policy established by law in such foreign jurisdiction. .....It could not be exercised in such foreign jurisdiction to the disadvantage of creditors resident there, because it is the policy of every government, to retain in its own hands the property of a debtor, until all domestic claims against it have been satisfied.” The distinction is drawn between the case of a receiver acting under the inherent force of his appointment alone, and a case where, by the terms of his appointment, he is directed to gather the assets wherever found.
The power of the court to confer such authority on a receiver is not limited to property found within the state where he is appointed. It is not necessary that the property should be within the jurisdiction of the court. Thus the courts of England have appointed receivers to manage landed property in India, Canada, China, Ireland, the South American states, and other places. 2 Daniels Ch. *1731, and cases cited. So, on principles of comity, the aid of a New Jersey court was extended to a foreign receiver to obtain possession of property, as against the officers of a corporation of which he was receiver, who may be endeavoring by fraud or subterfuge to withhold it. Bidlach v. Mason, 26 N. J. Eq. 230.
The principle announced in Hurd v. Elizabeth, supra, *185 which is a late and well considered case, is in our judgment supported by reason and authority. A few of the cases are: Pond v. Cooke, 6 Reporter (Conn.) 516; Hunt v. Columbia Ins. Co., 55 Maine, 297, 298; Ex parte Norwood, 3 Bissell, 501; Gray v. Ramis, 1 Wood, 420, affirmed in Davis v. Gray, 16 Wall. 203; Punk v. St. John, 29 Barb. 585; Barclay v. Quicksilver Min. Co., 6 Lans. 25; Willets v. Waite, 25 N. Y. 577; Peterson v. Chemical Bank, 32; Pugh v. Hurt, 52 How. (N. Y.) 22; Graydon v. Church, 7 Mich. 36.
Great reliance is placed on the remarks of Mr. Justice Wayne in deciding the case of Booth v. Clark, 17 How. 334, where it is said, “ that the receiver’s right to the possession of the property is limited to the jurisdiction of his appointment.” This, and other remarks, of the learned judge, are termed dieta, when applied to cases like the present. Hurd v. City of Elizabeth, 11 N. J. Law, 1; Ex parte Norwood, 3 Bissell, 512.
Booth v. Clark was correctly decided upon the facts before the court. One Camara recovered a judgment in court of New York against Clark, and upon a return of no goods on which to levy, had Booth appointed receiver in 1812, to reach equitable assets and choses in action of Clark, to satisfy his judgment. In 1851, Booth, as receiver, filed a bill in the circuit court of the district of Columbia, seeking to reach a claim upon Mexico in favor of Clark, which had been awarded to him in 1818. Clark was adjudged a bankrupt in 1813, and this claim against Mexico, which was then existing, passed to his assignee. It was held in Clark v. Clark, 17 How. 315, that this claim belonged to the assignee fn bankruptcy. The controversy in that case was therefore one between Clark’s assignee in bankruptcy, and Booth, receiver under the creditors’ bill of. Camara, filed in New York, as to which was entitled to collect from the United States the amount awarded to Clark by the commission under the treaty between the United States and Mexico. It was held that the assignee in bankruptcy, by virtue of his office, had the best right to the fund. . There were no liens or vested rights of the judgment creditor to his debtors claim or chose in action. The receiver only acquired an au *186 thority to sue for and reduce to possession this claim. This authority had no extra-territorial force, as against the assignee in bankruptcy, who represented all creditors alike, and who, by the adjudication in bankruptcy, became invested with the right to choses in action wherever found.
Unlike the present case there was no lien or mortgage, or other vested interest in the receiver. So far we have taken no notice of the fact that the litigating parties are both citizens of Kentucky. The plain tiff in error has no right to invoke that protection against the principles of comity, which this state would accord to her own citizens. "Whart. on Confl. of L. §§ 364-369.
In such a case it is held, “ where questions as to extraterritorial property arise between foreign assignees and foreign creditors, domiciled in the same state, the foreign law to which such parties are subject, will be upheld.” Ibid. § 369, and note.
In Rhode Island Bank v. Danforth, 14 Gray, 123, it was held that a mortgage on chattels in Massachusetts by a Rhode Island mortgagor to a mortgagee residing in the same state, would be sustained in the courts of Massachusetts, as against an attachment in Massachusetts, by a Rhode Island creditor.
The court say, all the parties are citizens of Rhode Island, and a valid mortgage there will transfer the property in Massachusetts.
If this were not the rule, it would enable a Kentucky creditor of an insolvent debtor by attachment, in Ohio, to defeat an assignment made in Kentucky for the equal benefit of his creditors, and thereby secure a priority over other, and even over a valid mortgage.

Judgment affirmed.