IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

## FEBRUARY TERM, 1879.

---

### HURD, RECEIVER, &c., v. CITY OF ELIZABETH.

1. A receiver appointed in a foreign jurisdiction, clothed with authority to take the designated property, wherever situate, may sustain a suit for such property in the courts of this state.
2. This is the rule whenever the creditors of the person represented by the receiver do not intervene.

---

On demurrer to the declaration.

The plaintiff brought this suit in his character of receiver of the Third Avenue Savings Bank. The allegations touching his right to sue were the following:. "For that the said S. H. Hurd heretofore, to wit, on the thirtieth day of November, eighteen hundred and seventy-five, at the city of Kingston, in the State of New York, to wit, at Elizabeth, in said county of Union, was duly appointed receiver of the Third Avenue Savings Bank, by the Supreme Court of the State of New York, in pursuance of the laws of said State of New York, and afterwards, to wit, on the day and year last aforesaid, duly qualified as such receiver, and thereupon became empowered to exercise and perform all the powers and duties

Hurd v. City of Elizabeth.

imposed upon him as receiver as aforesaid, by virtue of the laws of the State of New York and said appointment, and particularly by said laws and his said appointment, became seized and possessed of the personal property and choses in action of the said the Third Avenue Savings Bank, and entitled to sue for, collect and receive all moneys then due to the said the Third Avenue Savings Bank, and particularly the several sums hereinafter mentioned."

The declaration then showed, in the form of common counts, sundry moneys due, antecedently to the receivership, to the savings bank, and concluded in the usual style. The defendant demurred.

Argued at November Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the demurrant, *R. E. Chetwood.*

*Contra, Magie & Cross.*

The opinion of the court was delivered by

BEASLEY CHIEF JUSTICE. The plaintiff's right to stand as the actor in this suit is derived wholly from the receivership that was conferred upon him by the Supreme Court of the State of New York; and on the part of the defendant, such right is contested on the ground that it is contrary to established rules for the courts here to lend their assistance in carrying into effect an office created in the course of a proceeding before a foreign tribunal. To countenance this contention various authorities are cited, and notably among them that of *Booth* v. *Clark,* 17 *How.* 322. But that case belongs to a train of decisions which have been undoubtedly rightly decided, but which are not to be regarded as ruling the precise point now in issue. The decisions thus referred to will be found in *High on Receivers,* § 239, and they are all cases involving a controversy between the receiver and the creditors of the person whose property has been placed under the control of such

receiver. In such a posture of things it is manifest that different considerations should have force from those that are to control when the litigation does not involve the rights of creditors in opposition to the claims of the receiver. That the officer of a foreign court should not be permitted, as against the claims of creditors resident here, to remove from this state the assets of the debtor, is a proposition that appears to be asserted by all the decisions; but that, similarly, he should not be permitted to remove such assets when creditors are not so interested, is quite a different affair, and it may, perhaps, be safely said that this latter doctrine has no direct authority in its favor. There are certainly *dicta* that go even to that extent, so that text-writers seem to have felt themselves warranted in declaring that the powers of an officer of this kind are strictly circumscribed by the jurisdictional limits of the tribunal from which he derives his existence, and that he will not be recognized as a suitor outside of such limits. But I think the more correct definition of the legal rule would be that a receiver cannot sue, or otherwise exercise his functions, in a foreign jurisdiction whenever such acts, if sanctioned, would interfere with the policy established by law in such foreign jurisdiction. There seems to be no reason why this should not be the accepted principle. When there are no persons interested but the litigants in a foreign jurisdiction, and it becomes expedient, in the progress of such suit, that the property of one of them, wherever it may be situated, should be brought in and subjected to such proceeding, I can think of no objection against allowing such a power to be exercised. It could not be exercised in a foreign jurisdiction to the disadvantage of creditors resident there, because it is the policy of every government to retain in its own hands the property of a debtor until all domestic claims against it have been satisfied. But beyond this precaution, why should any restraint be put upon the foreign procedure? The question thus raised has nothing to do with that other inquiry that is frequently discussed in the books, whether a receiver at common law is in point of fact clothed with the power to sue in a

foreign jurisdiction; that is a subject standing by itself, for the present argument relates to a case in which the officer is authorized, so far as such power can be given by the tribunal appointing him, to gather in the assets, both at home and abroad. Conceding that the officer is invested with this fullness of authority, it would appear to be in harmony with those legal principles by which the intercourse of foreign states is regulated for every government, when its tribunals are appealed to, to render every assistance in its power in furtherance of the execution of such authority, except in those cases when, by so doing, its own policy would be displaced or the rights of its own citizens invaded or impaired. After completely protecting its own citizens and laws, the dictates of international comity would seem to require that the officer of the foreign tribunal should be acknowledged and aided. The appointment of a receiver, with full powers to collect the property of a litigant, wherever the same might be found, should be deemed to operate as an assignment of such property to be enforced everywhere, subject to the exception just defined. Such a rule is, I think, both practicable and just. If A, being the only creditor of B, should sue him in a court of this state, and the exigencies of justice should require that the property of B, wherever the same might be situated, should be put under the control of the *forum* in which the proceedings were pending, and such receiver should be appointed and should be legally clothed with the requisite authority to sue for, and take possession of such property, I can find nothing in the rules of law or of good policy that should permit the debtors of B to set up that such judgment has no extra-territorial force. To sanction such a plea would be to frustrate, as far as possible, the foreign procedure, simply for the purpose of doing so, the single result being that a court would be baffled, and perhaps prevented from doing justice. Such ought not to be the legal attitude of governments towards each other. To the extent to which this subject has been involved, it has, I think, been properly disposed of in the adjudications already made in this state. Thus in *Varnum* v.

*Camp,* 1 *Green* 326, it was decided that an instrument effi-cient at the domicil of the maker to transfer his property could not dispose, in a manner inconsistent with the policy of our laws, of his movables situate here.   In this case the duty of comity was admitted, but the decision was put upon the ground that this state was not required, by force of such duty, to abandon an established policy of its own in favor of a dif-ferent policy prevalent in another jurisdiction.   *Moore* v. *Bonnell,* 2 *Vroom* 90, was decided on a similar principle, and it has this additional feature, that while it in a general way rejects the control of the foreign policy, it does this only to the extent rendered necessary for the purpose of self-protec-tion, for, beyond this limit, it gives effect to and enforces the foreign law.   And the same disposition to co-operate, as far as practicable, in sustaining an alien policy is exhibited in the case of *Normand's Administrator* v. *Grognard,* 2 *C. E. Green* 425.   The foregoing view will be found to be in accord with the following cases:   *Hoyt* v. *Thompson,* 1 *Seld.* 320; *Runk* v. *St. John,* 29 *Barb.* 585; *Taylor* v. *Columbian Insurance Co.,* 14 *Allen* 353.

In view of these considerations and authorities my conclu-sion is, that the legal effect of the appointment of a receiver in a foreign jurisdiction in transferring to him the right to collect the property passing under his control by virtue of such office, will be so far recognized by the courts of this state as to enable such officer to sustain a suit for the recovery of such property.

But it is also said that the declaration is substantially de-fective.   It is certainly informal and so imperfect that upon motion it would have been set aside; and the only question is, whether, by force of our statute, it may not be supported as against a general demurrer.   The defects of this pleading are very marked.   For example: the appointment of a receiver is a measure incidental to a suit, and yet the pendency of such a suit is not shown, the curt averment being that the plaintiff, at a certain date, was appointed to such office by the Supreme Court of the State of New York.   So the capacities of the

receiver and his right to sue is in the form rather of a deduction of the pleader than the statement of a fact. I can find nothing analogous to such a course in any of the precedents of pleading. Still, as the imperfections of this declaration could readily have been objected to on motion, which has taken the place of a special demurrer, and as it is not entirely clear whether such imperfections are matters of substance or matters of form, I have concluded that the demurrer ought not to be sustained.