SECOND NAT. BANK OF PATERSON *v.* NEW YORK SILK MANUF'G CO.

*(Circuit Court, D. New Jersey. April 21, 1882.)*

1. INSOLVENT CORPORATIONS—CONTINUANCE OF EXISTENCE—RECEIVER.

The receiver of an insolvent corporation, appointed by the state court, becomes the custodian of the property, but the corporate entity still exists, and, under the Revised Statutes of New Jersey, until the injunction continues four months, the corporation may use and exercise its franchises and transact ordinary business in its own name, subject to the right of the receiver to the possession and control of the property.

2. SAME.

There is nothing in insolvency proceedings to prevent the corporation from continuing to accomplish the end and purpose of its existence; at least, until its franchise or right to act as a corporation is sold under the provisions of the statute, if, indeed, such sale would have that effect.

3. SAME—REMOVAL OF CAUSE—ATTACHMENTS.

So there is nothing to prevent an insolvent corporation, whose property is in the hands of a receiver, from appearing to attachments against its property and removing the controversy to the federal court.

*Blake & Taylor*, for the motion.

*Preston Stevenson*, contra.

NIXON, D. J. This is a motion of Alfred Wagstaff, receiver of the New York Silk Manufacturing Company, appointed by the supreme court of New York, and Augustus Zabriskie, receiver, appointed by the court of chancery of New Jersey, to strike out the appearance entered by the defendant company to two writs of foreign attachment

issued by the circuit court of the county of Hudson, New Jersey, against the property of the said company. The admitted facts of the case are these:

The New York Silk Manufacturing Company is an insolvent corporation, organized under the laws of the state of New York, doing business and having property in the state of New Jersey. On the thirteenth of September, 1881, one James Michin, a creditor, filed a bill in the court of chancery of New Jersey against the said company, alleging its insolvency, and praying for an injunction and for the appointment of a receiver. Pending this proceeding, to-wit, on the third of October, 1881, the Second National Bank of Paterson caused a writ of foreign attachment to be issued against the property of the company, by virtue of which the sheriff of the county of Hudson levied upon all its goods and chattels within the jurisdiction, and duly returned the writ with an inventory and appraisement of the property seized. On the twenty-ninth of October a second writ was issued out of the same court against the same defendant, by the same plaintiff, which was also levied upon the same property that was inventoried and appraised under the first writ. Subsequently to the issue of the first attachment, to-wit, on the twenty-first of October, the chancellor of New Jersey signed an order restraining the defendant company, and its officers and agents, from selling, transferring, encumbering, or otherwise disposing of any of the goods, chattels, rights, credits, moneys, or effects of the said company until the further order of the court. On the seventh of November the chancellor signed another order, appointing Augustus Zabriskie receiver, and directing him, before entering upon the office, to take the oath prescribed by law, and to give bond to the chancellor, with approved security, in the sum of $25,000, conditioned for the faithful discharge of its duties. The oath was taken, and the bond executed and filed, on the following fifteenth day of November.

In the mean time proceedings were going on in the supreme court of the city and county of New York, whereby several judgments were obtained against the defendant company, among which were two in favor of the Second National Bank of Paterson, upon the same claims on which the writs of attachment were issued in New Jersey. On the sixteenth of November, 1881, one Rufus O. Mason commenced an action there, pursuant to the provisions of section 1781 of the Code of Civil Procedure of the state of New York, against the New York Silk Manufacturing Company, William A. M. Grier, William I. Harris, James T. Michin, Joseph Michin, Jr., and Frederick H. Harris, the president, secretary, treasurer, and trustees of the said corporation. Upon filing the complaint he obtained from his honor, Judge Donohue, an order upon the defendants to show cause, on the eighteenth of November, why the individual defendants should not be compelled to account for their official conduct in the management and disposition of the funds and property of the silk company; why they should not be enjoined from collecting and receiving any debt or demand, or from paying out or transferring or delivering to any person, or in any manner interfering with any money, property, or effects of the said company during the pendency of the suit; and why a receiver should not be forthwith appointed, with the usual powers of receiv-

ers in like cases.   On the return-day, the rule was made absolute.   Alfred Wagstaff was appointed receiver, and the company, its officers, agents, and servants were enjoined "from collecting any debts or demands, and from paying out or disposing or transferring to any person any of its property or effects, except to deliver the same to the receiver."

Contemporaneously with these proceedings the defendant company moved, in the circuit court of the county of Hudson, to quash the writs of attachment as improvidently issued—the corporation having officers residing in the state at the time of their issue.   After hearing the parties the court refused to quash.   The same application was subsequently made by the New Jersey receiver, but the judge declined to hear argument, treating the question as *res adjudicata.*

Pending a motion in the state court for the appointment of an auditor in the attachment suits, and for the sale of the property as perishable, Mr. Zabriskie, the New Jersey receiver, applied to the chancellor for authority to take the possession and control of the attached property, which authority, after hearing, the vice-chancellor declined to grant, on the ground that the court of chancery had no right to interfere with the proceedings in the courts of law where liens had been acquired before the date of the receiver's appointment.

Failing in these motions, the silk company took the usual steps prescribed in the third section of the act of March 3, 1875, to remove the case.   Appearances were entered in behalf of the corporation in the attachment suits.   Its president made and filed in the state court a petition for the removal of the suits into the circuit court of the United States, accompanied with a bond, with good and sufficient security, which petition and bond were accepted by the state court.   By virtue of these steps all further jurisdiction over the cases ceased in the state court and vested here.

The case thus stated presents for consideration questions of interest and importance.

The counsel for the attaching creditors suggested at the outset that neither of the receivers had any standing here, and were not placed by the law of their appointment in a position which authorized them to intervene and make any motion in the suit.

Accepting the decision of the supreme court in *Booth* v. *Clark,* 17 How. 322, as the law in the federal courts in regard to the powers of receivers outside of the jurisdiction which appointed them, there would seem to be foundation for this view in respect to the New York receiver.   It is there said, (page 335:)

"We think that a receiver has never been recognized by a foreign tribunal as an actor in a suit.   He is not within that comity which nations have permitted, after the manner of such nations as practice it in respect to the judgment and decrees of foreign tribunals, for all of them do not permit it in the same manner and to the same extent, to make such comity international or a part of the law of nations."

Then, after distinguishing between the rules existing in the courts of the United States and of Great Britain in respect to foreign assignments in bankruptcy, the court proceeds to say:

"He [the receiver] has no extraterritorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court, or another jurisdiction, as the judgment creditor might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

This was simply applying to foreign receivers the same rule which they had before announced in regard to foreign executors and administrators. *Kerr* v. *Man,* 9 Wheat. 565.

But it is not necessary to decide the question, as the receiver appointed by the court of chancery of New Jersey is also here, and is not obnoxious to the objection of deriving his power to act from a foreign tribunal. We have more difficulty in regard to his standing. His appointment was made after the lien had been created against the property of the insolvent corporation by force of the attachment proceedings, and he took it subject to the lien.

It is admitted that the appointment of the receiver invested him with full power to sell, assign, and convey all the assets of the corporation; but this did not include the right to the possession and control of the property that was in legal custody at the time, and held by legal process for the benefit of those creditors to whom the law gave a lien for the payment of their claims.

The case, in our judgment, turns upon the question, what power to act remains in a corporation after a decree of insolvency, an injunction, and the appointment of a receiver? This officer doubtless becomes the custodian of the property, but the corporate entity still exists, and the fair implication from the provisions of section 83 of the title "Corporations," in the Revised Statutes of New Jersey, is that until the injunction continues four months the corporation may use and exercise its franchises and transact ordinary business in its own name, subject, of course, to the right of the receiver to the possession and control of the property.

The question came befor the supreme court of Massachusetts in the case of *Coburn* v. *Boston Papier Mache Manuf'g Co.* 10 Gray, 243. It will be seen, by reference to the insolvent corporation act of Massachusetts, that after insolvency the commissioner, by publication, forbids the payment of any debt and the delivery of any property

belonging to the corporation, to it or for its use, and also the transfer of any property or the making of any contract. The assignee, standing in the place of the receiver, under the New Jersey statute has quite as full power, and is clothed with as large control over the affairs and assets of the corporation, as the receiver appointed by a court. The counsel for the defendants contended on the argument that the proceedings in insolvency amounted to an extinguishment of the corporation, but the court was of the opinion that there was nothing in such proceedings to prevent the corporation continuing to accomplish the end and purpose of its existence; at least, until its franchise, or right to act as a corporation, was sold, under the provisions of the statute, if, indeed, such sale would have the effect. The reason assigned was that the corporation notwithstanding the proceedings, might have assets sufficient to pay all its debts, and then no impediment would exist before a surrender pursuant to law, or a forfeiture ascertained and declared by a proper judicial proceeding, from resuming its business.

There is no decision in New Jersey contradicting this view, although in two or three cases *obiter dicta* are found which seem to indicate a different conclusion.

It results that there was nothing in the pending proceedings in insolvency which hindered the corporation from appearing to the attachment against its property and removing the controversy to this court; and however much the court may be disposed to promote equality among all the creditors, it is hardly authorized by an order to divest a class of creditors of the lien which they acquired under the provisions of the attachment laws of New Jersey by the voluntary act of the corporation. The motion is therefore refused.

See *Thatcher* v. *Rockwell*, 4 Morr. Trans. 41.