## In re BUILDERS' LUMBER CO.

(District Court, E. D. North Carolina. October 10, 1906.)

1. BANKRUPTCY—LIENS—CONTRACT OF CONDITIONAL SALE.

Claimant sold certain saw mill machinery to a receiver by a contract of conditional sale, in which it reserved title until full payment. The receiver had no authority as such to make the purchase, and turned the machinery over to the bankrupt corporation, which installed it in its mill and thereafter made payments thereon, to the amount of two-thirds of the price, to the receiver, who transmitted the same to claimant. Under the law of the state the contract was valid only from the time of its record as against creditors or subsequent purchasers even with actual notice, and the contract in question was not acknowledged nor recorded until nearly two years after its date and shortly before the bankruptcy, when claimant recorded it and instituted an action in claim and delivery in a state court and obtained an order of seizure, under which the officer purported to seize the property, but did not remove the same nor detach it from the bankrupt's mill to which it was attached, and it was sold by the trustee in bankruptcy as a part of the bankrupt's plant. The bankrupt never became a party to the contract with claimant, although the latter

had knowledge that it was in possession of the property. *Held*, that claimant had no lien on the property or its proceeds either by virtue of the contract which was void as against the bankrupt, nor by virtue of its attempted seizure which was void under Bankr. Act July 1, 1898. c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450].

**2. SAME—PROVABLE DEBTS.**

One who sold property on credit to a third person, who turned it over to a corporation which did not become a party to the contract of sale, did not thereby become a creditor of the corporation for the price and entitled to prove a claim against its estate in bankruptcy.

**3. SAME—LIENS—ULTRA VIRES MORTGAGE BY CORPORATION.**

A mortgage executed by a corporation when insolvent and within four months prior to its bankruptcy to secure notes which were delivered to an officer of the corporation without consideration and pledged by him as collateral security for his personal indebtedness, and which were issued for such purpose and not for any corporate purpose as was known to the pledgees, does not constitute a valid lien in their favor against the bankrupt's property.

**4. SAME—ESTOPPEL OF CREDITOR TO CONTEST LIEN.**

A creditor of an insolvent corporation *held* not estopped by an agreement entered into with the holders of a mortgage on the debtors' property, looking to a sale of such property, to contest the validity of the mortgage in subsequent bankruptcy proceedings against the debtor.

In Bankruptcy. On review of decision of referee.

Jno. D. Bellamy and McLean, McLean & McCormick, for claimants. Iredell Meares, for petitioning creditors.

PURNELL, District Judge. The Builders' Lumber Company was adjudged bankrupt on a petition filed on April 19, 1905, by the S. M. Price Machinery Company and Omohundro Bros. The officers of the Builders' Lumber Company were P. W. Johnson, president, W. J. Edwards, vice president and manager, H. P. Edwards, treasurer, and T. C. McNeely, secretary. It was organized under a charter granted by the state of North Carolina. The adjudication was made May 1, 1905. On petition of the duly appointed trustee, the American Wood Working Machinery Company, W. H. Saunders, and R. H. Lynn, alleging they claimed preferred liens and were necessary parties to the proceeding, were made parties and filed answer. The American Wood Working Machinery Company claimed to be the owner of certain machinery in the possession of the bankrupt corporation by virtue of a conditional sale, title reserved, signed by W. J. Edwards as receiver of the Southern Sawmills & Lumber Company, and by him transferred to the bankrupt, and by virtue of certain claim and delivery proceedings instituted about the time or shortly before, within a few days, of the filing of the petition in bankruptcy and within four months of the adjudication. The parties thus brought in answered and the proceeding was referred to a master pro hac vice, to take testimony, find the facts, and report his conclusions of law thereon.

As to this claim the master finds the following facts: W. J. Edwards, as receiver of the Carolina Northern Railroad, on June 23, 1903, ordered from the American Wood Working Machinery Company certain machinery. The agreed price was $6,000, payable, one-half in 30 days, balance in 60 days. The terms of the order were as follows:

"It is agreed that title to the property mentioned above shall remain in the consignor until fully paid for in cash, and that this contract is not modified or added to by any agreement not expressly stated herein, and that a retention of the property forwarded, after thirty days from date of shipment, shall constitute a trial and acceptance, be conclusive admission of the truth of all representations made by or for the consignor and void all its contracts or warranty express or implied. It is further agreed that the purchaser shall keep the property fully insured for the benefit of the American Wood Working Machinery Company."

On July 21, 1903, the said company notified said Edwards, as receiver of the Carolina Northern Railroad Company, that goods were ready for shipment, and inclosed contracts to be signed. This contract was signed by Edwards as receiver of the Carolina Northern Railroad Company, and returned to said company August 11, 1903. On August 15, 1903, said Edwards wrote said company, asking it to erase the name of the Carolina Northern Railroad, as the material was ordered for the Southern Sawmills & Lumber Company, and thereupon, August 18, 1903, said company sent Edwards a new contract to be executed by him as receiver of the Southern Sawmills & Lumber Company. On September 1, 1903, said Edwards returned the new contract, signed by him as receiver of the Southern Sawmills & Lumber Company, saying, "This company is strong and good, and doing a profitable business." The said company on receipt of this contract, signed by Edwards as receiver of the Southern Sawmills & Lumber Company, returned the former contract.

The new contract, which is in the form of an order and acceptance, was dated as of June 23, 1903, and contains the same terms as hereinbefore set out. The execution of the said order by W. J. Edwards, as receiver, was proven by the witness H. P. Edwards. The execution of the paper by said company was acknowledged before a notary public on February 17, 1905. It was admitted to probate by the clerk of the superior court of Robeson county, February 21, 1905, and recorded in the register of deeds office of said county on February 22, 1905. The machinery was shipped on August 9 and 10, 1903, to Kemper, S. C., to the Builders' Lumber Company. It was received at Marietta in due course of transportation, was delivered to the Builders' Lumber Company, and is now and has been a part of the said Builders' Lumber Company. Said machinery was a part of said plant at the time this court sold the plant to Sanders, Lynn, and Harper. W. J. Edwards had no authority from the court to purchase said machinery and to make said agreement as receiver of the Southern Sawmills & Lumber Company. Edwards represented to said company that he bought said machinery for the Southern Sawmills & Lumber Company. From the inception of the agreement the said company dealt with the transaction as a debt due to said company by the receiver of the Southern Sawmills & Lumber Company. Said company did not contract with the Builders' Lumber Company and did not extend it credit on this machinery. It refused on November 9, 1904, to accept a new agreement and security to be executed by the Builders' Lumber Company in lieu of the agreement above set out. Said company acknowledged on October 9, 1903, the payment of $1,000. It then called to the

attention of W. J. Edwards that $2,000 more was due, and the balance of the $6,000 more would be due in three weeks. It acknowledged the receipt of $1,000 on account of said machinery on October 28, 1903, urging at the same time that the remainder of the money was overdue. From November, 1903, the said company by various and sundry letters, in some of which further payments are acknowledged, frequently called attention to the nonpayment of the amount due it on this contract. This correspondence extends from the date of said contract to November 1, 1904. The said company knew by the terms of the order or agreement accepted by it that the machinery was to be delivered to the Builders' Lumber Company, at Kemper, S. C. After September, 1903, the said company had knowledge that the said machinery was located at Marietta, in the possession of the Builders' Lumber Company. By reasonable inquiry they could have known that the Builders' Lumber Company was a separate and distinct corporation, not connected with the receivership of W. J. Edwards. The said agreement was in the possession of the said company from its delivery to the date of its record on February 22, 1905. At the time of the recording of said agreement the unpaid balance due by W. J. Edwards, as receiver of the Southern Sawmills & Lumber Company, upon said agreement, was overdue for a year or more. Petitioning creditors and other creditors of the Builders' Lumber Company had no legal notice of the said agreement, or that the purchase price of the said machines had not been paid. The reason assigned by said company for not recording said mortgage is because it was not its custom to record mortgages the law did not require to be recorded within a stated time, except where it deems it necessary for its interest, and it had no reason to believe at the start, or for a good while thereafter, that its interests in this agreement would not be protected by Edwards without the necessity of recording the instrument. It relied previous to the record of the said agreement on the confidence it had in W. J. Edwards as receiver that its debt would be paid, and it had a contract which could be recorded at any time in addition. All the orders taken by said company for machinery are on the form used in this agreement, and it is the custom of the company not to record these papers until it deems it necessary for its protection, unless the law of the state in which the machinery is sold requires the papers to be recorded within a certain time. "The company takes the stand that it is unnecessary to worry customers by recording such instruments when they don't like such things, as customers often do not like documents of the kind on record, even when they may be perfectly good to take care of them."

The American Wood Working Machinery Company instituted an action in the superior court of Robeson county, N. C., against the Builders' Lumber Company, W. J. Edwards, receiver of the Southern Sawmills & Lumber Company, W. J. Edwards, individually, Marietta Lumber Company, S. A. Edmund, and T. C. McNeely. The summons was issued on the 1st day of April, 1905, and was returnable at term on the 22d day of May, 1905. On the same date it filed an affidavit for claim and delivery, alleging that it was the owner and entitled to the

immediate possession of certain enumerated machinery. The affidavit stated that it was wrongfully detained by the defendants; that the cause of its detention was not known. The actual value of the property was about $3,000 and the plaintiff was about to commence his action for the recovery of the said property. It gave bond and obtained an order of seizure. The sheriff made on the said papers the following return:

"Rec'd Apr. 1st, 1905, executed 3rd Apr. 1905, by reading and delivering copies of summons, affidavits, undertaking and order of seizure to W. J. Edwards, Vice Pres. Builders' Lumber Company, W. J. Edwards, Rec. Southern Saw Mills & Lumber Co., T. C. McNeely, Sec. of Marietta Lumber Co., T. C. McNeely, S. A. Edmund and W. J. Edwards, and by seizing and taking into my possession the property, within described and after holding three days delivered it to the plaintiff."

The complaint in the action was filed at the May term of court. There is nothing in the affidavit, complaint, or order of seizure, other than a similar description of the machinery, that connects the said proceeding with the agreement or contract of the said Edwards, receiver, and said company. The claim and delivery proceeding was instituted 19 days before the bringing of this proceeding in bankruptcy, and 30 days before the Builders' Lumber Company was adjudged bankrupt. The deputy sheriff visited the plant of the Builders' Lumber Company to seize the property described in the affidavit. He did not take actual, physical possession of it. He found the machines attached to the floor with screws or bolts, and adjusted with the necessary belting and other machinery for the operation of the plant. He notified the superintendent of the Builders' Lumber Company that he had seized the property and would leave him in possession of it as his agent. The sheriff did not return to the plant thereafter to make any further delivery to the plaintiff, nor did he in any manner detach the property from the plant. The property has remained as situated at the institution of the said claim and delivery proceeding and prior to the bankruptcy proceeding, and passed with the plant when sold by order of this court. The Builders' Lumber Company paid for the purchase of the machinery covered by the contract between the Southern Sawmills & Lumber Company and the American Wood Working Machinery Company the sum of $4,000 to W. J. Edwards, as receiver of the Southern Sawmills & Lumber Company. The said W. J. Edwards, as receiver of said Southern Sawmills & Lumber Company, is due an unpaid balance upon the said agreement to the American Wood Working Company, the sum of $2,575.63, with interest.

"The Constitution and laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." Const. Art. 6, § 2. The Constitution of North Carolina of 1868, art. 1, § 29, provides "a frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty," to which constitutional provisions it seems necessary to call attention to some of the parties and attorneys in this proceeding, particularly those who have in the course of the proceeding attempted to interfere with the property

of the bankrupt by a proceeding in claim and delivery in the state court. The act of Congress of July 1, 1898 (30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418]), the bankrupt act, passed under article 1, § 8, c. 4, of the Constitution of the United States, makes all such proceedings, which are in the nature of attachment proceedings, void. Hence the conclusion of the referee that the proceedings instituted in the superior court of Robeson county by the American Wood Working Machinery Company are void and the property or the fund arising from the sale thereof must be surrendered at once to the trustee in bankruptcy is affirmed. Taking all said in the answer of this company to be true, it was dealing with a receiver of the Southern Sawmills & Lumber Company, who showed and had no authority to so deal as such receiver, and, if he had had such authority, it would have been illegal; for even the court could not grant to its receiver authority to construct a plant such as is claimed was to be constructed in said answer. The contract with Edwards, receiver, being without authority and void, the American Wood Working Machinery Company dealt only with Edwards.

The parties claim to have contracted with the receiver, who had no authority to contract, to establish a new or branch business. Receivers are appointed for the benefit of all parties who may establish rights in the cause. The money and property in his hands is in custodia legis for whoever can make out a title to it. It is the court itself which has the care of the property in dispute. The receiver is but a creature of the court. He has no powers except such as are conferred upon him by the express orders of the court. Bates, § 580; Booth v. Clark, 17 How. 330, 15 L. Ed. 164; Baltimore Building Loan Association v. Alderson, 99 Fed. 494, 39 C. C. A. 609. Being without authority to enter into such contract, it was void. But the Builders' Lumber Company had the machinery, and through its general manager, Edwards, paid $4,000 thereon through Edwards as receiver. This is true according to Edwards' testimony, but claimant disclaims any contract with the Builders' Lumber Company, and never set up any claim against such company, now bankrupt, until the institution of the claim and delivery proceedings, which, as we have seen, were void under the bankrupt act, and insists on its contract with Edwards, receiver, which was void. It takes two persons capable of making a contract to contract, and Edwards was without authority to enter into this contract. Hence there was in contemplation of law no such contract.

Claimants disregarded the law of North Carolina regarding the registration of its supposed contract of sale. Section 1275, Code 1883, section 983 of Revisal of 1905, provides all conditional sales of personal property in which the title is retained by the bargainor shall be reduced to writing and registered in the same manner, for the same fees, and with the same legal effect as is provided for chattel mortgages. Section 1254, Code of North Carolina, provides no deed of trust, chattel mortgage, etc., shall be valid at law to pass any property as against creditors, etc., but from the registration of such deed of trust or mortgage. In discussing this section in Barrington v. Skinner, 117 N. C. 52, 23 S. E. 90, the Supreme Court holds that no notice, however clear, of an unregistered mortgage, can effect the rights of creditors or subse-

quent purchasers. The act, now section 1275 of the Code, was passed for a purpose, and it is not unreasonable to say such purpose was to prevent exactly what the parties have attempted to do in this transaction—give credit on a false basis to corporations. At all events, the law of the state has been ignored, and the conditional sale, not being registered, even if valid, could not effect the rights of creditors or subsequent purchasers; i. e., the Builders' Lumber Company as purchaser of the machinery from Edwards or any one else, or subsequent creditors, who gave credit on the faith of the possession of such machinery in its plant, upon which no lien could be found on the records. The explanation or reasons for not recording the paper may be satisfactory to the American Wood Working Machinery Company and its attorneys, but is not satisfactory under the law.

The special master, in his conclusions of law as follows, is affirmed:

"That the American Wood Working Machinery Company is not entitled to a lien upon the specific property mentioned in the conditional contract of sale executed between the said company and W. J. Edwards, receiver of the Southern Sawmills & Lumber Company, because the said machinery had become a fixture of the plant of the Builders' Lumber Company; that it had paid therefor $4,000 to the Southern Sawmills & Lumber Company; that the contract of sale between said claimant and the Southern Sawmills was not a contract with the Builders' Lumber Company, and said contract, although dated June 23, 1903, was not acknowledged until February 17, 1905, and not recorded until February 22, 1905; that said American Wood Working Machinery Company is not a creditor of the Builders' Lumber Company and not entitled to share either by priority or common creditor in the assets of the defendant bankrupt; that the claim and delivery proceedings brought by the American Wood Working Machinery Company and the levy of the sheriff in pursuance thereof upon the articles mentioned in the affidavit and complaint in said action, having been instituted and the levy executed within four months from the institution of this proceeding, is void under section 67, subsec. 'f,' of the bankrupt law (30 Stat. 564, c. 541 [U. S. Comp. St. 1901, p. 3450])."

## Claim of Saunders & Lynn, $20,000.

The special master, after hearing testimony and considering other proofs, finds the following facts, eliminating references to evidence and unnecessary verbiage, tautology, etc., to wit:

W. J. Edwards was receiver of the Carolina Northern Railroad; also receiver of the Southern Sawmills & Lumber Company. He was also vice president and general manager of the Builders' Lumber Company. As receiver of the Carolina Northern Railroad Company, he issued three receiver's certificates, each bearing date of 23d day of November, 1903, pursuant to an order of the United States Circuit Court for the Eastern District of North Carolina. One of said certificates, being No. 3, certified that there was "due R. H. Lynn, R. N. Harper, and W. H. Saunders six thousand ($6,000) dollars, with interest at the rate of six per cent. (6%) per annum, from date until paid, on account of purchase of box cars for said road." Another of the said certificates, being No. 6, certified that there was "due W. H. Saunders, R. H. Lynn, and Robert N. Harper two thousand ($2,000) dollars, with interest at the rate of six per cent. (6%) per annum, from date until paid, on account of purchase of rails for terminals." Another of the said certificates, being No. 4, certified that there was

"due Robert N. Harper, R, H. Lynn, and W. H. Saunders seven thousand five hundred ($7,500) dollars, with interest on account of purchase of flat cars for said road." Robert N. Harper is the president of the American National Bank of Washington, D. C., W. H. Saunders is its vice president, and R. H. Lynn is its cashier. W. H. Saunders is a real estate broker. The Carolina Northern Railroad Company or its receiver did not at the time of the issuance of the said certificates owe any sum to the said Saunders, Lynn, and Harper on account of the purchase of box cars for said road, or on account of purchase of rails for terminals or on account of purchase of flat cars for said road. The said R. H. Lynn, W. H. Saunders, and R. N. Harper agreed with W. J. Edwards to raise for him the face of the said certificates, to wit, $15,500, for a commission of $750. They did raise the money on said certificates by placing certificate No. 3 with H. Clay Harding, Asheboro, Va., certificate No. 4 with the Loudon National Bank, Leesburg, Va., and certificate No. 6 with the National Bank of Manassas, Manassas, Va. Each of the said certificates was indorsed by the said Robert N. Harper, W. H. Saunders, and R. H. Lynn, for the purpose of passing title to the holders, and on certifiate No. 3 the prior indorsements are guarantied by the American National Bank, Washington, D. C., R. H. Lynn, cashier. The Builders' Lumber Company had no interest in the transaction relative to said certificates.

Some time after the transaction between the said W. J. Edwards and Saunders, Lynn, and Harper, and some time before the execution by the Builders' Lumber Company of the mortgage to said Saunders and Lynn, alleged by petitioning creditors to be fraudulent, the said W. J. Edwards went to W. H. Saunders, at Washington, D. C., and represented to him that these certificates had been improperly issued by him, that he had used the money raised thereon for other purposes, and that he had been ordered by the court to return the certificates to the court. R. H. Lynn and R. N. Harper, also, had notice that said certificates had been informally issued, and had to be redeemed. Edwards had sold these certificates outright. The parties said they were going to be contested, and Edwards agreed to take them back from Saunders, Lynn, and Harper. Edwards offered to borrow from Saunders, Lynn, and Harper the sum necessary to take up the certificates, and execute to them mortgages on the properties of the Philadelphia Construction Company, a corporation which he controlled, but which did not owe Saunders and Lynn any sum, and upon the Builders' Lumber Company, and before taking said mortgages the said W. H. Saunders came to North Carolina, examined the property, and consulted his attorneys, and for himself, R. H. Lynn and Robert N. Harper agreed to make the loan. Pursuant to said agreement the said W. J. Edwards caused a special meeting of the stockholders of the Builders' Lumber Company to be held at Sanford on the 19th day of December, 1904, at which meeting the following resolutions were passed:

"Whereas, it is necessary to negotiate a loan of at least $20,000 to provide for the payment of the debts of this corporation, and, whereas, arrangements have been perfected for the negotiation of said loan from I. H. Saunders

and W. H. Saunders of the city of Washington, District of Columbia, therefore be it resolved that the president or vice president and secretary of this company be authorized and directed to negotiate a loan of not less than $20,000, said loan bearing interest from date at 6% per annum, payable semiannually, and to execute the note or notes of this company therefor, and as security for the payment thereof the said officers of this corporation are authorized and instructed to execute a mortgage upon the property of this corporation.

"Be it further resolved that the said mortgage, a copy whereof is now presented to the meeting and read, be executed by the president or vice president and attested by the secretary and the common seal of the corporation affixed thereto."

On the same date a meeting of the directors was held at the same place and the action of the stockholders approved. The said form of mortgage was submitted to W. H. Saunders with the minute book, showing the resolutions passed, and exhibited to him, also, were proxies by certain stockholders to W. J. Edwards that authorized the issue of said mortgage for the purpose of raising money to pay the corporation debts. W. H. Saunders declined to loan the money upon this mortgage, because he desired that the mortgage be made to W. H. Saunders and R. H. Lynn as mortgagees and trustees, instead of to W. H. Saunders and I. H. Saunders, and because the proxies used in voting in this meeting and the resolutions passed by the stockholders and directors were qualified by the provision that the money so to be borrowed was to be applied to the payment of the debts of the corporation. He stated as his reason therefor that neither he nor his associates desired to be responsible for the application of the fund. Thereafter the stockholders of the Builders' Lumber Company held a meeting on January 5, 1905, at Sanford, at which meeting the following resolutions were passed:

"Resolved that the proper officers of the Builders' Lumber Company are hereby authorized and instructed to execute a mortgage or deed of trust in the name of the company upon all property of the company, except its lumber and logs, upon a form to be approved by the directors and counsel selected by them, for the purpose of securing a sum not exceeding $20,000, to bear interest at the rate of six per cent. per annum.

"Resolved (2) that the board of directors are authorized to empower the vice president to sign the name of the company by W. J. Edwards, vice president, to be attested by the secretary and to attach the common seal of this company to said mortgage and to notes or bonds secured thereby."

On the same date the directors held a meeting and passed the following resolutions, after reciting the foregoing as a preamble:

"Resolved that the vice president and secretary be, and they are hereby, authorized and directed in the name of the company, in its behalf, and under its corporate seal, in the form this day approved by the board of directors and counsel, and which is hereby directed to be spread upon the minutes, to execute and deliver a mortgage to W. H. Saunders and R. H. Lynn, of the city of Washington, District of Columbia, conveying to W. H. Saunders and R. H. Lynn all of its rights, title, and interest, under a certain lease and option executed to the Builders' Lumber Company on or about September 1st, 1902, in and to a tract of land containing about ten acres near the town of Marietta, in Robeson county, North Carolina, adjoining the land of Mrs. Williamson, O. Page, and others, together with the buildings, engines, boilers, machinery, fixtures, and appliances of every character located upon the above-described lot, to secure the payment of twenty promissory notes of even date herewith, each for the sum of one thousand dollars ($1,000), all due and payable on the

5th day of July, 1905, and bearing interest from date at the rate of six per cent. per annum. Which said notes shall be, executed by the vice president in the name of the Builders' Lumber Company, by W. J. Edwards, vice president, under the seal of the company, and attested by its secretary."

Pursuant to this resolution, the Builders' Lumber Company executed the mortgage, bearing date the 5th day of January, 1905, to W. H. Saunders and R. H. Lynn, mortgagees and trustees, to secure the payment of the sum of $20,000, represented by 20 promissory notes of even date, each in the sum of $1,000 and payable on the 5th day of July, 1905, with interest. This mortgage was filed for registration after being admitted to probate and was registered in the county of Robeson, wherein the property was located on the 6th day of January, 1905, at 10 o'clock p. m., within four months of the date when this proceeding was instituted. Thereafter, pursuant to the agreement between the parties, W. J. Edwards executed six personal notes, each dated January 7, 1905, payable 90 days after date, to W. H. Saunders and R. H. Lynn, or order, for value received, being borrowed money loaned him, negotiable and payable at the American National Bank, Washington, D. C. One of said notes is for $2,500, another for $6,000, another for $2,000, and another for $5,000, aggregating $15,500, and two others, each for $375, aggregating $750, which said two notes were executed to cover commission to the said parties. As collateral security to secure the payment of the said personal notes, the said Edwards delivered to the said Saunders and Lynn 635 shares of the capital stock of the Builders' Lumber Company, 17 notes, each in the sum of $1,000, of the Builders' Lumber Company, secured by mortgage of the Builders' Lumber Company hereinbefore set out, 10 notes of the Philadelphia Construction Company, each in the sum of $1,000, secured by a mortgage executed by said corporation to Saunders and Lynn upon all of its property, and, in addition thereto, the said Saunders and Lynn hold three notes of the said Builders' Lumber Company executed to them and secured by said mortgage, each in the sum of $1,000. Such notes are not referred to in the notes of W. J. Edwards to said Saunders and Lynn, but are of the series of 20 notes issued and secured by said mortgage.

The Philadelphia Construction Company is a South Carolina corporation, controlled by W. J. Edwards, and the mortgage securing its notes is upon a tramway and timber holdings, located in Robeson county, N. C., and said mortgage was recorded on January 6, 1905, in the county of Robeson, but the Builders' Lumber Company has no connection and is not interested in said Philadelphia Construction Company or in the transaction by it with the said Saunders, Lynn, and Harper. The said six notes were executed on a printed form, which measures up as a written obligation to the definition of a lawful fence given by a North Carolina judge—"horse high, bull strong, and pig tight." There was no possibility for Edwards to jump over, knock down, or get through the guards around him. After the execution and delivery of the papers the said W. H. Saunders, R. H. Lynn, and R. N. Harper took up the certificates of the Carolina Northern Railroad, which they had negotiated and indorsed, and delivered the same to W. J.

Edwards, who returned them to the United States Circuit Court as ordered. The object of the Builders' Lumber Company, in the execution of said notes and mortgage, was not for a corporate purpose, but for the purpose primarily to redeem the said certificates of the Carolina Northern Railroad, issued by the said Edwards, indorsed and negotiated by said Saunders, Lynn, and Harper, and to pay the said Saunders, Lynn and Harper the sum of $750 commission. No money was paid by Saunders, Lynn, and Harper to the Builders' Lumber Company upon the said notes and mortgage, and there was no corporate consideration for the execution of the said notes and mortgage. The said notes and mortgage are now held by the said Saunders, Lynn, and Harper, and the only sum advanced thereon was the sum of $15,500, which said Saunders, Lynn, and Harper paid to redeem said certificates. The said Lynn and Harper in the transaction aforesaid had knowledge that the said notes and mortgage were not executed for a corporate purpose, but for the purpose aforesaid. They knew that W. J. Edwards was vice president of the Builders' Lumber Company and did not personally own the notes and mortgage of the Builders' Lumber Company put up by him as collateral.

### The Claim of The United Lumber Company.

The United Lumber Company on September 9, 1903, loaned the Builders' Lumber Company and W. J. Edwards, receiver of the Southern Sawmills & Lumber Company, on their joint notes, indorsed by W. J. Edwards personally, the sum of $5,000 in cash. The said notes were signed by W. J. Edwards, receiver of the Southern Sawmills & Lumber Company, and the Builders' Lumber Company by W. J. Edwards, vice president. There were four notes, each dated September 9, 1903, three $1,000 each, payable September 1 and November 1, 1904, respectively, and one for $2,000, payable December 1, 1904, with interest. As collateral to the said notes, the said W. J. Edwards delivered to the said United Lumber Company a receiver's certificate, payable to bearer, and issued by him as the receiver of the Southern Sawmills & Lumber Company, pursuant to an order of court. The said W. J. Edwards represented to the said company at the time of making said loan that the Builders' Lumber Company had been incorporated, but the stock was not all subscribed for, and he had personally subscribed for enough stock to control the company, and that it was connected with the Southern Sawmills & Lumber Company; the latter being practically the parent company. At the time of the loan the memorandum of agreement, dated the 9th day of September, 1903, between the Builders' Lumber Company and the United Lumber Company, being an agreement for the shipment by the Builders' Lumber Company of its output and the handling of the same by the United Lumber Company, was entered into between the parties as a further condition of the loan. On October 24, 1904, the memorandum of agreement between W. J. Edwards, receiver of the Southern Sawmills & Lumber Company, and the United Lumber Company, was executed between the parties, being an agreement in regard to the shipment of lumber and the terms upon which the same was to be handled. Under date of October 28,

1904, the said United Lumber Company surrendered the said notes above described, and, in lieu thereof, accepted similarly executed notes, and, again, on October 31, 1904, the second set of notes were surrendered, and the United Lumber Company, in lieu of the same, accepted the notes upon which it now claims against the bankrupt. The said notes are executed by the Builders' Lumber Company, by W. J. Edwards, vice president, and by W. J. Edwards. They consist of five notes, each dated September 28, 1904, payable to the United Lumber Company, one for $2,000, due December 1, 1905, and three each for $1,000, due September 1, October 1, and November 1, 1905, with interest at the rate of 6 per cent. The money advanced upon the said notes was paid and used by the Builders' Lumber Company. At the time of taking the said notes the said W. J. Edwards and the United Lumber Company entered into a memorandum agreement, dated at Norfolk on the 31st day of October, 1904. The said memorandum agreement acknowledges the receipt by Edwards of $5,000 collateral security, surrendered by the said United Lumber Company, in exchange for which said Edwards delivered to Alexander, its representative, 160 shares of the capital stock of the Builders' Lumber Company, and the said Builders' Lumber Company assigned and delivered to said United Lumber Company certain insurance policies, covering the property of the plant of the said company, aggregating $8,000. Edwards further agreed to deliver 80 shares of the capital stock of the Bank of Sanford and $5,000 of the mortgage bonds of the Carolina Northern Railroad; the above three lots of security being pledged as collateral for the notes dated September 28th, amounting to $5,000, being the same notes referred to in the contract of October 24th, referred to above. The notes now sued on are owned and claimed by the United Lumber Company as against the bankrupt. The $5,000 collateral surrendered was the receiver's certificate of the Southern Sawmills & Lumber Company, which had been previously given the United Lumber Company as collateral security. The said W. J. Edwards at the time of this transaction represented to the United Lumber Company that he was obliged to recover the said receiver's certificate for return to the court; that he wanted to have the Southern Sawmills & Lumber Company released from any responsibility on the notes, as he had had no authority to sign the notes as receiver of the Southern Sawmills & Lumber Company, and no authority to have put up the receiver's certificate as collateral. He further represented at the time that the bonds of the Carolina Northern Railroad were duly issued and were negotiable. The bonds were delivered afterwards to the United Lumber Company. The 160 shares of the capital stock was also delivered at the time of the transaction. The stock of the Bank of Sanford was not delivered. The agreement further stipulated that the United Lumber Company would advance to the Builders' Lumber Company $2,500 on the Builders' Lumber Company's note, indorsed by W. J. Edwards and said company as security for the loan, or to deliver 200 shares of the capital stock of the Builders' Lumber Company, the said 200 shares of stock to be surrendered upon payment of said note on or before the date of maturity. The United Lumber Company

by check on the Third National Bank of Springfield, Mass., advanced to the Builders' Lumber Company the sum of $2,500, the Builders' Lumber Company executed its note for the said $2,500, and the said W. J. Edwards put up as security thereto stock certificate No. 10, being 200 shares. The said note for $2,500 was paid on January 30, 1905, and was surrendered. The 200 shares of stock represented by certificate No. 10 is still in the possession of the United Lumber Company, having been filled out in their name. The stock represented by certificate No. 5, for 160 shares of the capital stock of the Builders' Lumber Company, is held by the United Lumber Company as collateral. The certificate of the capital stock of the Builders' Lumber Company was held as collateral to the payment of the said note of $2,500, which has been paid. On December 27, 1904, at Norfolk, Va., at the request of W. J. Edwards, the United Lumber Company signed a proxy, appointing W. J. Edwards to vote the said shares of stock at a meeting to be held on December 27th. On January 2d, in a letter to W. J. Edwards, the said George F. Alexander, treasurer of the said United Lumber Company, inclosed the proxy which appears in the minute book, at page 25, which is in words:

"We, the United Lumber Company of Springfield, Mass., hereby constitute and appoint W. J. Edwards our true and lawful attorney in fact to vote the three hundred and sixty shares of stock in the Builders' Lumber Company, a corporation chartered under the laws of North Carolina, at a meeting of the stockholders of said Company called to be held at Sanford, North Carolina, on Thursday, January 5th, 1905, or at any time or place to which said meeting may be adjourned with purpose or substitution and revocation. Hereby ratifying and approving of all acts done by my said attorney in fact in the premises, as if we were in person doing and performing the same.

"Given under our hand and seal this second day of January, 1905.

"The United Lumber Company   [Seal.]

"By George F. Alexander, Treasurer & Mgr."

The bonds of the Carolina Northern Railroad, which were delivered to the United Lumber Company as further collateral, were surrendered by them to W. J. Edwards for return to the court on January 30, 1905, as he had been required by the court to surrender the same, as they did not belong to him, and was in distress because the United Lumber Company would not surrender them without consideration. They were regarded as the best security they held as collateral. The United Lumber Company were advised by their counsel, Mears, to surrender the bonds, even without consideration, because they could be traced as the property of others, and would have to be surrendered if identified, and thereupon Edwards, representing to George F. Alexander, the treasurer of the United Lumber Comany, that he must have the bonds registered at Lumberton, or he would be involved in great trouble, as the bonds were not his property, the said company surrendered them without consideration.

George F. Alexander, as treasurer of the United Lumber Company, being thereto duly authorized, and William H. Saunders and R. H. Lynn, as mortgagees and trustees, acting for themselves and Robert N. Harper, the only parties in interest, entered into the contract dated the 30th day of January, 1905. On January 31, 1905, a contract was

entered into by and between W. J. Edwards, as vice president of the Builders' Lumber Company, and the Louis Stave Company of West Virginia, for the purchase and sale of the plant of the Builders' Lumber Company at the sum of $22,500, which contract is the contract referred to in the agreement between the United Lumber Company and Saunders and Lynn. On the 1st day of February, 1905, the said George F. Alexander, as treasurer of the United Lumber Company, being thereto authorized, and W. H. Saunders and R. H. Lynn, mortgagees of the Builders' Lumber Company, for themselves and Robert N. Harper, being the parties alone interested, entered into a contract supplemental to their contract of the 30th of January, and supplemental to the contract between the Builders' Lumber Company and the Louis Stave Company. On the 2d day of February the Builders' Lumber Company by writing duly executed assented to the said agreement between said parties of February 1, 1905. At the time the said contracts were entered into by said parties, they were led to believe by W. J. Edwards, vice president of the Builders' Lumber Company, that the said Builders' Lumber Company did not owe more than a few hundred dollars, other than its debt to Saunders and Lynn and to the United Lumber Company. The said United Lumber Company had been assured by the said Saunders and Lynn that they could effect a sale of the Builders' Lumber Company plant, and at the time the Louis Stave Company was investigating it with a view of purchase. The parties believed, if the sale could be effected, that the debts of the Builders' Lumber Company could be paid in full, and the contract was made by the United Lumber Company with the view of not embarrassing the probabilities of sale by the institution of bankruptcy proceedings. Later the sale was not effected because of the complication in which the said Builders' Lumber Company was involved. The United Lumber Company became one of the petitioners in this proceeding.

To the findings of fact exceptions are filed, but after a careful examination of a voluminous record this court is of the opinion such exceptions are without actual merit. Hence said exceptions are overruled, and the special master's findings of fact affirmed.

The referee finds as a conclusion of law, first, that the notes executed by the Builders' Lumber Company to W. H. Saunders and R. H. Lynn, mortgagees and trustees, and the mortgage executed by the Builders' Lumber Company to the said parties to secure said notes, not being for a corporate purpose, and the moneys loaned thereon not having been applied to a corporate purpose, to the knowledge of the trustees and mortgagees, and no consideration therefor having passed to said mortgagor, the same are ultra vires and void against the creditors in this proceeding of the Builders' Lumber Company; second, that the contracts of the United Lumber Company and William H. Saunders and R. H. Lynn, trustees and mortgagees, dated January 30, and February 1, 1905, are not an estoppel against the United Lumber Company in setting up the invalidity of the said mortgage; third, that the Builders' Lumber Company is indebted to the United Lumber Company in the sum of $5,000 upon the said notes, with interest

148 F.—17

from the maturity thereof, and that it is also indebted to the said company in the sum of $486.64 on open account, with interest from the 12th day of May, 1904, and that the said United Lumber Company is entitled to share pro rata with the creditors whose claims have been proven and admitted in the assets of the defendant corporation; fourth, that the funds in court should be distributed, first, to the payment of the expenses of the trust, and, second, to the payment of the common creditors pro rata, including the petitioning creditors. On all of which conclusions of law the referee is affirmed. The claim of Saunders, Harper, and Lynn is further objectionable as an attempt to give a preference within four months of the adjudication, even if it were otherwise valid.

It is further ordered that the trustee proceed at once to reduce the estate to cash, as provided by law, to collect the bond given for $11,500 for the deferred payment, and the referee proceed as soon as may be to close up the estate.